557 So.2d 519 (1990)
John T. McMILLAN
v.
Albert KING, Howard M. Evans, James Mitchell, Dr. Silas Peyton, and James S. Henderson, Board of Trustees of Greenwood-Leflore Hospital, a Community Hospital.
No. 07-CA-58879.
Supreme Court of Mississippi.
February 14, 1990.
*520 Jessica S. Upshaw, Hopkins & Anderson, Gulfport, William H. Liston, Jackson, for appellant.
James E. Upshaw, Tommie G. Williams, Lonnie D. Bailey, Upshaw Williams Biggers Page & Kruger, Greenwood, for appellees.
Before HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
The primary point on this appeal presses the familiar principle that jury verdicts may not be disturbed where supported by substantial evidence, although our precise factual context is a bit out of the ordinary. Generally speaking, the appeal is presented by a hospital patient who, during preparation for medical tests, slipped and fell and broke his hip and leg and sued the Hospital for his resulting damages. Appellant presents also an evidentiary point regarding trial use of pre-trial depositions we have not addressed since we adopted the Mississippi Rules of Evidence.
The jury found for the Hospital. We affirm.

II.

A.
Because of our procedural posture, we state the facts fairly but most consistent with the verdict of the jury and, hence, most favorably to the Defendant Hospital.
John T. McMillan, an eighty-year-old retired farmer, lives in Greenwood, Mississippi. On January 3, 1985, Dr. Eugene Webb admitted McMillan to the Greenwood-Leflore Hospital for treatment of a persistent cough thought to be caused by pneumonia. After six days in the Hospital, McMillan was to be released on the morning of January 9, 1985, but only after some final tests were run. Preliminary to these tests, McMillan was to be given an enema.
On the morning of January 9, at approximately 5:30 a.m., James Ivory, a medical attendant employed by the Hospital came to McMillan's private room to administer the enema. Ivory prepared the soap suds solution in the sink of the room and then began the treatment, interrupting it when McMillan was full. Ivory checked the floor for liquid between the bed where the enema was being given and the bathroom. Finding none, Ivory directed McMillan to *521 the bathroom, some ten to fifteen feet away. McMillan walked under his own power, with Ivory following close behind in case there was any need to assist. McMillan discharged the enema solution, but it contained stool, necessitating the repetition of the treatment. Thus, McMillan returned to the bed where the procedure was repeated without untoward consequence. Once again the enema solution contained stool, thus requiring a third treatment. Ivory observed the floor and noted it was clean prior to administering the third treatment.
Ivory put McMillan back on the bed on his left side and started giving him the third enema. After a short while, McMillan said he couldn't take it all and that "it was coming back." McMillan got up on his own out of the bed at which time Ivory noticed that some of the enema solution was leaking out of him. Ivory told him to take his time and not to run. Ivory described McMillan as "hurrying to the bathroom." "He speeded up." "He was just walking speedily." "Walking kind of fast." Ivory picked up a towel and followed behind, wiping the floor and McMillan's leg. Some of the solution reached the floor, however, and moments later McMillan slipped and fell and broke his hip and leg, although Ivory was close enough to catch McMillan and partially break his fall. In the end, Ivory opined, "If he would have took his time, he would have never fell."

B.
On January 29, 1986, McMillan commenced this civil action by filing his complaint against Albert King, Howard M. Evans, James Mitchell, Silas Peyton and James S. Henderson, as trustees of the Greenwood-Leflore Hospital (herein "the Hospital"). McMillan charged the Hospital had been negligent in its care and that, in consequence, he had fallen and sustained serious personal injuries. The Circuit Court called the case for trial on June 15, 1987, at the conclusion of which the jury returned a general verdict for the Hospital.
McMillan moved for judgment in his favor on the issue of liability notwithstanding the verdict of the jury. The Circuit Court denied this motion. McMillan now appeals.

III.
McMillan argues that on the facts Ivory was negligent as a matter of law in his handling of McMillan on the occasion of the third enema and that this negligence, which is said to be attributable to the Hospital via respondeat superior, proximately caused McMillan's injuries. McMillan asked that the Court hold the Hospital negligent and that the jury be instructed peremptorily to this effect. The Circuit Court denied the motion but submitted McMillan's theory to the jury.[1] Following the jury's verdict for *522 the Hospital, McMillan renewed the point, moving for partial judgment notwithstanding the verdict. Rule 50(b), Miss.R.Civ.P. He appeals the denial of this latter motion.
While the particular factual context may not be one with which this Court has the most judicial familiarity, our scope of review, and the standard which the Circuit Court faced with McMillan's Rule 50(b) motion was required to apply, are quite clear. This Court must
consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 326 (Miss. 1988); see also Wilner v. Mississippi Export Railroad Co., 546 So.2d 678, 681 (Miss. 1989); Slay v. Illinois Cent. Gulf R. Co., 511 So.2d 875, 879 (Miss. 1987); Rester v. Morrow, 491 So.2d 204, 211-12 (Miss. 1986); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss. 1983); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975) (sometimes hereinafter "the Paymaster rule" or the "Paymaster standard").
In considering whether an issue was such that the court should have granted the Rule 50(b) motion and decided the point as a matter of law, we slant the evidence as required by Paymaster and progeny and scrutinize it under the applicable substantive legal standards. In our present procedural context, we necessarily must find those standards in the legally permissible substantive instructions[2] given the jury regarding the point at issue, for those instructions embody the standards under which the jury considered the evidence. See Pennock v. State, 550 So.2d 410, 413 n. 4 (Miss. 1989); Fisher v. State, 481 So.2d 203, 213 (Miss. 1985). When we are asked to hold that no reasonable jury could have found for the Hospital, the point presupposes the particular substantive legal standards according to which this particular jury has considered the Hospital's liability vel non.
Instruction P-5, just noted, articulates the three possible bases upon which Ivory and the Hospital may have been negligent. These are, first, in permitting McMillan to walk from his bed to the bathroom; second, in failing to provide him proper support and assistance as he walked to the bathroom; and, third, in failing properly to supervise him immediately before and at the time of his slip and fall. By way of contrast, the jury was further instructed via Instruction No. D-7 that the Hospital had no liability if the jury believed Ivory
acted reasonably and that he provided to Mr. McMillan the same degree of care, skill and diligence which is normally provided by minimally competent medical attendants when providing similar services to their patients under the same or similar circumstances.
We take Instructions Nos. P-2, P-3, P-5 and D-7 and read them together as furnishing the substantive standards by which we measure whether a jury issue was made.
On his present appeal, McMillan has narrowed his focus to the moment when he was standing up out of the bed and Ivory noticed the solution coming out of him. Counsel charges the circumstances then existing were such that Ivory was negligent when he allowed McMillan to walk the ten or twelve feet across the floor to the bathroom, but rather Ivory should have put him back in the bed and provided a bed pan in *523 which he could expel the solution. McMillan further points to the fact there was no bed pan available for such an untoward eventuality, although Ivory conceded that he could have easily obtained one in advance. Recalling the Paymaster standard and our Rule 50(b) context, McMillan argues that the totality of the circumstances existing at that moment were such that the only reasonable interpretation of the facts is that Ivory was negligent.
On this appeal, McMillan rests his case upon Ivory's testimony as to what happened on the morning of January 9 and the testimony of Suzanne Johnston, Assistant Director of Nursing Services at Greenwood-Leflore Hospital, regarding the proper nursing practice under the circumstances. In this view we must recall Ivory's testimony summarized in Part II above and then examine carefully Johnston's testimony.
Johnston was called as an adverse witness by McMillan and stated that she had held the position of Assistant Director of Nursing Services since 1981. She testified there was no reason to take any special precautions against the possibility of a fall during an enema due to McMillan's age or health. On cross-examination by McMillan's counsel, Johnston agreed that it would be hazardous for a patient to be walking while expelling an enema solution. Further, that "good care" would require a person to guard against a situation where enema solution was dripping down the patient's leg onto his foot while walking, thereby creating the possibility of the patient slipping.
On direct examination by the Hospital, Johnston gave her opinion that, based on the depositions of Ivory and Sherrian Hony, the charge nurse when the accident occurred, Ivory "acted appropriately" and did nothing "improperly which caused [McMillan] to fall ... [nor] failed to do something which should have been done... ."
On re-cross, Johnston, however, gave a different opinion when presented with a hypothetical situation. During re-cross, the following exchange occurred:
Q. But, Mrs. Johnston, in fairness now, seeing that situation that I described to you that in the third enema  during the process of the third enema, Mr. McMillan starts expelling the enema solution and probably bed  body waste while he's still in bed and as he gets up  as the orderly gets him up and starts walking, he's continuing to do that, in the first place, isn't it your testimony that you would never let him get up and walk across there in that condition?
A. If  if he was continually expelling the enema.
Q. If he starts in the bed and when you get him, he's still doing it 
A. Still doing it?
Q.  would you put him back to bed or would you carry him to the bathroom?
A. No, I'd keep him in bed.
On the other hand, Richard McCormick was called by the Hospital as an expert in the area of nursing and was so qualified. McCormick was, at the time of the trial, the Administrative Director of Nursing Services at Hinds General Hospital. On direct examination, based on the depositions and testimony of Ivory and McMillan, and the testimony of the other witness, it was McCormick's opinion that Ivory used reasonable care and judgment under the circumstances in administering the enemas to McMillan:
Based on [Ivory's] description, the first two enemas were of no consequence. [McMillan] got out of bed, went, and came back. Based on Mr. Ivory's description when he administered the third one, [McMillan] expressed the concern that he was losing or going to lose his enema. Mr. Ivory stated that as the patient rolled over and got up, he saw some solution, a few drops  I forgot his exact words, but a small amount on his clothes to keep the solution off the bed. The patient was then on the floor and moving. It would have been very difficult to get him back in bed or have him stop. The same consequences could have occurred either direction. It was Mr. Ivory's judgment the man was on his way to the bathroom to allow him to go, *524 and I agree with that judgment at that point based on his description.
On cross-examination, McCormick did concede that, if the patient were losing a large amount of solution, he should be directed to remain in the bed. McCormick further conceded that it would not be good nursing care to allow a patient who stood up out of bed, had not yet moved, and was losing the enema to walk to the bathroom.
It is certainly true McMillan's counsel extracted from Assistant Nursing Director Johnston the admission that, if McMillan were expelling the solution as he got out of and stood by the bed, the attendant should not have allowed him to walk to the bathroom. The same may be said of counsel's cross-examination of McCormick. In this McMillan argues he has established the appropriate predicate for granting partial judgment in his favor on the matter of liability notwithstanding the verdict of the jury.
McMillan overlooks two things. First, expressions of standards of care by a witness such as Johnston are not binding and conclusive of what the legal standard should be. Rather, they are merely evidence of the standard. See Hall v. Hilbun, 466 So.2d 856, 872 (Miss. 1985). Jury Instructions Nos. P-2, P-3, P-5 and D-7, read together and coupled with Paymaster, furnish the standards by which we measure the evidence, including the expert opinion testimony. There is nothing in the record suggesting Johnston had any education or experience or other familiarity with the legal standard of care the Hospital owed, much less that she was speaking in legal terms as she offered her opinion. A careful attention to the testimony of nurse Johnston certainly renders it susceptible to the interpretation that she is expressing standards which are higher than the standard of "minimal competence under the circumstances imposed by the law and according to which the jury considered the issue." A like reading may be given McCormick's testimony.
Second, in our present procedural posture, McMillan does not have the luxury of picking out the concededly useful portions of his cross-examination of Johnston and McCormick and requiring that we focus only upon that part of their testimony. If we did that, we would observe the obverse of the Paymaster rule, that is, we would be considering that part of the witness' testimony most favorable to the party making the motion rather than that part most favorable to the non-moving party. Considering nurse Johnston's testimony as a whole, on direct and cross-examination, and given the standards set forth in Instructions Nos. P-2, P-3, P-5 and D-7, there is certainly a reasonable predicate for the jury believing that nurse Johnston was of the view that medical attendant James Ivory conducted himself in a non-negligent manner when he allowed McMillan to walk to the bathroom, Ivory following along behind McMillan trying to wipe up the expelled solution and to wipe McMillan's legs and being so close he was able to catch McMillan and partially break his fall. And the same of expert witness McCormick.
Moreover, the evidence was such that the jury could have believed McMillan's emission was not great enough to create such a hazard that Ivory should have prohibited his walking to the bathroom. He had twice before traversed the few feet between bed and bathroom without incident. If the emission was minor, as the evidence certainly suggests was possible, the jury could well have believed it would have been improper for Ivory to have prevented McMillan from walking to the bathroom. After all, the evidence is certainly such the jury could reasonably have believed McMillan was sufficiently in extremis that keeping him in the bed simply was not a viable alternative. Moreover, the jury could reasonably have believed Ivory urged McMillan not to run but instead McMillan did hurry or walk too fast and his own negligence was what caused him to fall, a matter which the jury may certainly consider even though no instruction has been given on the point.[3]Cf. *525 Edwards by Edwards v. Patrick by Patrick, 469 So.2d 92, 95 (Miss. 1985); Watkins v. Ross, 380 So.2d 1265, 1267 (Miss. 1980); Altom v. Wood, 298 So.2d 700, 702 (Miss. 1974).
In the end, Jury Instruction No. P-5 furnishes the most particular view of the legal standard. When the evidence is given its Paymaster-required slant, a reasonable juror may well have found that Ivory's permitting McMillan to walk from his bed to the bathroom was not a failure of due care, that Ivory did not fail to provide McMillan proper assistance and support as he walked from his bed to the bathroom, and that Ivory properly supervised McMillan immediately before and at the time of his slip and fall. All things considered, the evidence was not such that the Circuit Court had authority to set aside the verdict. Rather, the Court acted correctly when it denied McMillan's motion for partial judgment notwithstanding the verdict.
The assignment of error is denied.

IV.
McMillan argues the Circuit Court erred when it refused his effort to offer in evidence as a part of his case-in-chief a portion of James Ivory's deposition. McMillan offered the portions of Ivory's deposition without calling Ivory as a witness. The reason for McMillan's strategy became evident after McMillan testified. McMillan was unable to remember the details of the accident sufficiently to make out a prima facie case against the Hospital. Only by using Ivory's deposition or calling him as an adverse witness could McMillan hope to present a prima facie case.
The Hospital objected on grounds that Ivory was present and available to testify. The Circuit Court sustained the objection. McMillan proffered to the Circuit Court those portions of Ivory's deposition he would have presented and then called Ivory as an adverse witness during his case-in-chief.
The point is governed by a combined reading of several provisions of the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence.
Rule 32(a), Miss.R.Civ.P., states in pertinent part:
(a) Use of Depositions. At the trial or upon the hearing of a motion on an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any purpose permitted by the Mississippi Rules of Evidence.

(2) The deposition of a party or of anyone at the time of taking the deposition was an officer, director, or managing agent or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose.
(emphasis added).
Rule 801(d), Miss.R.Ev., provides in pertinent part:
(d) Statements Which Are Not Hearsay. A statement is not hearsay if: ...

(2) Admission by Party-Opponent. The statement is offered against the party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship... .
A rational reading of these rules supports McMillan's view. Ivory was an employee of the Hospital and the deposition, specifically those parts of it McMillan would have entered into evidence, were "concerning a matter within the scope of *526 his ... employment." The statements were admissible under Rule 801(d)(2)(D) which be general reference we find incorporated into Rule 32(a)(1), Miss.R.Civ.P.
One treatise on the Federal Rules of Civil Procedure interprets the Advisory Committee Note to mean that the phrase "for any purpose permitted by the Federal Rules of Evidence" specifically makes statements falling under Rules 801(d) and 801(d)(2) and contained in a deposition admissible despite availability of the witness. 8 C. Wright & A. Miller, Federal Practice and Procedure §§ 2144 & 2146 (Supp. 1988). The federal courts have routinely accepted this view in the somewhat analogous Rule 32(a)(2), holding the availability of the witness to testify is immaterial, and it is error to deny the admission of a deposition into evidence on this ground. See, e.g., Aetna Casualty & Surety Co. v. Guynes, 713 F.2d 1187, 1194 (5th Cir.1983); Jackson v. Chevron Chemical Co., 679 F.2d 463, 466 (5th Cir.1982); King & King Enterprises v. Champlin Petroleum Co., 657 F.2d 1147, 1164-66 (10th Cir.1981); Coughlin v. Capital Cement Co., 571 F.2d 290, 308 (5th Cir.1978); Pingatore v. Montgomery Ward & Co., 419 F.2d 1138, 1142 (6th Cir.1969); Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 488 (9th Cir.1961). These cases go further, however, to hold any such error harmless when the witness is called and the testimony covers the subject matter of the deposition. See also Fenstermacher v. Philadelphia National Bank, 493 F.2d 333, 338 (3d Cir.1974).
McMillan should have been permitted to enter the proffered portions of Ivory's deposition into evidence without calling Ivory as a witness.[4] This is so even though Ivory was available to be called as a witness. However, the record discloses that Ivory's testimony pertinent to McMillan's case was elicited from Ivory as an adverse witness. Where that testimony differed from Ivory's deposition, McMillan was freely allowed to impeach Ivory with the parts of the deposition McMillan wished enter in evidence. Because McMillan got before the jury the points he had proffered via cross-examination of Ivory, we hold the error legally harmless. The assignment of error is denied.

V.
McMillan presents three further issues, none of which merit discussion nor reversal. Considering McMillan's appeal as a whole, we find the verdict was within the evidence and the law and there are no legal grounds for intervention. Accordingly, the judgment of the Circuit Court must be affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs to parts I, II, III and V and dissents to part IV.
NOTES
[1] Jury Instruction P-5, as given to the jury, provides in relevant part:

B.
[Failure to Exercise Reasonable Care in the Administration of Treatment]
If you find from a preponderance of the evidence in this case that, given Mr. McMillan's condition, Ivory:
1. should not have permitted Mr. McMillan to walk from his bed to the bathroom; or
2. failed to provide plaintiff with proper assistance and support as he walked from his bed to the bathroom when Ivory knew, or should have known by the exercise of reasonable care, that such movements, taking into consideration the existing circumstances and Mr. McMillan's condition, could reasonably result in serious bodily injury to him; or
3. failed to properly supervise Mr. McMillan immediately before and at the time of his slip and fall; or
then and in either of said events, the Hospital breached the duty of care it owed to Mr. McMillan to exercise reasonable care in the administration of treatment to him.
If you further find that such breach of duty or duties, if any, on the part of the Hospital proximately caused or proximately contributed to Mr. McMillan's slip and fall and his subsequent injuries and damages, then you must return a verdict in favor of Mr. McMillan as against the Hospital.
Via Instruction P-3, the Court provided the jury a more general description of the Hospital's duties to McMillan, to-wit:
Under Mississippi law, a hospital owes its patients a duty to exercise reasonable care. This duty requires a hospital to exercise such reasonable care and attention for its patient's safety as the patient's mental and physical condition, if known or should be known, may require. The hospital's duty is in proportion to the physical or mental ailments of the patient.
Additionally, Instruction P-2 was given which was a boiler plate definitional instruction covering "negligence", "reasonable care" and "proximate cause".
[2] No party has suggested error in any of the substantive instructions the Circuit Court submitted to the jury.
[3] McMillan requested Instruction P-6 which would have instructed the jury he was guilty of no negligence in the premises. The Circuit Court refused that instruction and, in our view, correctly so.
[4] Had the Circuit Court allowed McMillan to admit and use the proffered parts of Ivory's deposition, the Hospital would have been entitled upon request "at that time to introduce any other part ... [of the deposition] which ought in fairness be considered contemporaneously with it." Rule 106, Miss.R.Ev.; see also Rule 32(a)(4), Miss.R.Civ.P.; Huddleston v. Herman & MacLean, 640 F.2d 534, 553 (5th Cir.1981); Westinghouse Electric Corp. v. Wray Equipment Corp., 286 F.2d 491, 494 (1st Cir.1961).