624 So.2d 482 (1993)
Camille Ann CONNER
v.
James D. HARRIS and Larry Odom.
No. 90-CA-1256.
Supreme Court of Mississippi.
July 29, 1993.
Rehearing Denied October 21, 1993.
S. Robert Hammond Jr., Bryant Clark Dukes Blakeslee Ramsay & Hammond, Hattiesburg, John B. Gillis, Clarksdale, for appellant.
Jack W. Land, Bryan Nelson Randolph Land & Weathers, Barney B. Hebert, Hattiesburg, for appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the court:
Camille Ann Conner appeals a jury verdict and judgment in favor of James D. Harris and Larry Odom in her suit against them in the circuit court of Pearl River County. Because the court refused instruction P-5 requested by Conner that Harris was negligent as a matter of law in turning his vehicle to the left out of his lane of traffic without first looking to see whether or not Conner was following him, we reverse.

FACTS
At approximately 12:30 p.m. March 15, 1989, Harris was driving his employer Odom's spreader truck north on Highway 11 in Pearl River County. Si Jones Road was over the crest of the hill in the direction in which Harris was traveling, and Harris planned to turn left off the highway onto this road.
Behind Harris, also headed north, Conner was driving a Pontiac Sunbird owned by Tammy Porter, who was also riding in the car.
Harris was traveling approximately 15 miles per hour, Conner 55-60 miles per hour. There was a dispute as to whether Harris had his blinkers on, but he admitted that he had seen Conner's vehicle behind him as he crested the hill, and was aware it was following, but he did not look behind him before making a left turn preparatory to turning into Si Jones Road. He also admitted that had he looked, he would have seen the Pontiac.
At the time Conner had pulled into the left, or southbound lane, preparatory to passing the Harris vehicle. When Harris turned to the left, Conner was unable to stop and the vehicles collided in the left, southbound lane.
At the conclusion of the trial, Conner requested and was refused the following instruction:
JURY INSTRUCTION NO. P-5: The Court instructs the jury that the Defendant, James O. [sic] Harris, is guilty of negligence by failing to comply with his duty to keep a proper lookout, specifically *483 his failure to ascertain the location of the Plaintiff's vehicle prior to executing the left hand turn, and if you further find that the Defendant, James O. [sic] Harris' failure to comply with this duty was a proximate contributing cause to the Plaintiff's injuries, then your verdict shall be for the Plaintiff against the Defendants.
The jury found for the defendants, and Conner has appealed

LAW
Miss. Code Ann. § 63-3-707 (1972) provides in pertinent part: "No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety ..."
In Gates v. Murphree, 286 So.2d 291 (Miss. 1973), the defendant Gates attempted to overtake and pass a vehicle he was following, and as he did so a vehicle following the Gates vehicle (which Gates did not see prior to pulling into the left lane), also attempted to pass. The circuit court held that Gates was negligent as a matter of law in pulling out of his lane of traffic, and attempting to pass without seeing the vehicle to his rear, and without first ascertaining he could do so with reasonable safety. Citing the statute, we affirmed. Gates is dispositive.
It was reversible error for the court to refuse this requested instruction, and we according reverse and remand for a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., and SULLIVAN and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion.
SMITH, J., dissents with separate written opinion joined by DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J.
BANKS, Justice, concurring:
While I agree with Justice Smith that Gates does not say what the majority says it says, I, nevertheless, agree that this case should be reversed for the failure to give instruction P-5 on the authority of Campbell v. Schmidt, 195 So.2d 87 (Miss. 1967). In Gates this Court determined that a peremptory instruction was mandated by a violation of the explicit statutory language prohibiting passing in a curve. Miss. Code Ann. § 63-3-611 (1972). The opinion did observe that the duty to keep a proper lookout applied to vehicles to the rear, as well as, those to the front of the driver. In Dennis by and through Cobb v. Bolden, 606 So.2d 111 (Miss. 1992), we alluded to a peremptory instruction for failure to see that which was there to be seen citing Campbell which held just that. Conner was entitled to such an instruction such as P-5 on the evidence adduced at the trial. Because the instruction was not given, we should reverse and remand. If the evidence at a second trial is substantially the same, it follows that P-5 should be given.
SMITH, Justice, dissenting:
I respectfully dissent.
Conner's appeal is based on the trial judge's failure to grant plaintiff's jury instruction P-5, a peremptory instruction as to James Harris' negligence. The majority contends that the trial court erred in refusing this instruction and would have the case reversed and remanded for a new trial with a peremptory instruction as to Harris' negligence as a matter of law. I find nothing in the facts or case law to compel this result.
The standard of review for a request for peremptory instruction and a judgment notwithstanding the verdict is the same. Munford, Inc. v. Fleming, 597 So.2d 1282, 1283 (Miss. 1992). Under this standard of review, this Court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, then the peremptory instruction should be granted. McMillan v. King, 557 So.2d 519, 522 (Miss. 1990).
The testimony that is "pivotal" and which the majority relies on heavily is Harris' testimony that he did not look in his rearview mirror immediately prior to attempting the left hand turn onto Si Jones Road. Harris *484 also stated that had he looked in his rearview mirror he would have seen Conner. While this testimony was clearly not favorable to Harris, under the standard of review this testimony cannot be considered in isolation. The lower court must consider the favorable testimony and all favorable inferences in determining whether to grant a peremptory instruction. Where there is conflicting testimony, as in this case, the jury should be properly instructed and allowed to make its own decision. That is exactly what was done. The jury heard Harris' testimony and was given the following two instructions:
Jury Instruction No. P-6
The Court instructs the jury that the Defendant James O. Harris, had a duty to not make a left hand turn until he first exercised reasonable care in both of the following:
1. Determine by a proper lookout both to the front and to the rear whether said turn could be made safely; and
2. Give a signal of his intention to turn, either by signal device or by hand continuously for a reasonable distance before turning.
If you find that the Defendant, James O. Harris, failed to comply with either of the above, and if you further find that said failure was a proximate contributing cause of the Plaintiff's injuries, then your verdict shall be for the plaintiff against the Defendants.
Jury Instruction No. P-7
The Court instructs the jury that if you find by a preponderance of the evidence in this case that the Defendant, James O. Harris, while operating a motor vehicle owned by Defendant, Larry Odom, failed to comply with his duty to keep a proper lookout, specifically his failure, if any, contributed to the accident which is the basis of this lawsuit, and if you did that the Defendant, James O. Harris's failure to comply with this duty was a proximate contributing cause to the Plaintiff's injuries, then your verdict shall be for the Plaintiff.
These instructions gave the jury ample opportunity to find for the plaintiff, Camille Conner. The jury did not find for Conner but rather found for Defendants Harris and Odom.
In reaching their conclusion that the lower court erred, the majority and Conner refer us to Gates v. Murphree, 286 So.2d 291 (Miss. 1973) and Miss. Code Ann. § 63-3-707 (1972), which reads as follows:
No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner provided in this article in the event any other vehicle may be affected by such movement.
A signal of intention to turn right or left shall be given continuously for a reasonable distance before turning.
No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this article to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
Conner and the majority rely on Gates for the proposition that a lead vehicle violates Section 63-3-707 when its driver fails to see a following vehicle engaged in a passing maneuver. This is a misleading interpretation of Gates. In Gates, the defendant was the second in a procession of three vehicles, rather than the lead vehicle. Both Gates and the third vehicle attempted to pass the lead vehicle. The Gates case does not state that if a driver cannot see to the rear he cannot comply with the requirements of § 63-3-707, rather it states that § 63-3-611 read along with § 63-3-707 "place the burden upon the passing vehicle to see that such movement can be made with reasonable safety." Id. at 293. Gates' testimony established that he violated the rule expressly set out in § 63-3-611 against passing upon a curve. This is very different from the case sub judice. The facts are different and the statute is different. There is nothing dispositive about Gates.
*485 There are sufficient questions as to the facts of this case to send the issue of negligence to the jury. Section 63-3-707 articulates several responsibilities a driver has before making a turn off a highway. The primary one is to notify the driver following behind by some acceptable signal to anticipate a turn. There was conflicting testimony as to whether or not Harris complied. He testified that he put his blinkers on as soon as he saw Conner's vehicle. Conner and her passenger claimed not to have seen the blinker. The patrolman and Odom who arrived at the accident scene testified that the blinkers were still on after the accident.
Harris' failure to check his rearview mirror is not a specific duty set out in the statute. Whether this constitutes a failure to exercise "reasonable safety" should be addressed by the jury under proper instructions, such as those which were given. The jury was adequately instructed on this point. Taken as a whole the jury instructions properly set forth the applicable law for the jury. Based on Harris' testimony the jury could have found for the plaintiff. They did not.
Conner testified that she saw Harris a mile or two before the accident. At trial she testified that she was traveling fifty-five to sixty miles per hour as she came over the hill and approaching the end of the double yellow line. Dr. Lewis E. Hatten testified that Conner said she was traveling sixty-five miles per hour when the accident occurred. Highway Patrolman Adrian Dedeaux testified that the speed limit on Highway 11 is fifty-five miles per hour and that Conner told him she was going sixty-five miles per hour. Although she and her passenger denied seeing Harris' blinker flashing, there was testimony from several other witnesses which put this testimony in doubt. Conner also denied being able to see the intersection of Si Jones Road with Highway 11 because of an embankment, but this testimony was also disputed by other witnesses. There was evidence to support the jury's verdict. Because there is disputed testimony as to what transpired with both vehicles, to grant a peremptory instruction would take the fact-finding function away from the jury.
Looking at the jury instructions as a whole, as we are compelled to do, I strongly believe that there was no abuse of discretion by the lower court in refusing to peremptorily instruct the jury as to Harris' negligence. I would affirm the decision of the jury. I therefore dissent.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J., join this Opinion.