# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00155-SCT

*NATCHEZ ELECTRIC AND SUPPLY CO., INC.*

*v.*

*WAYNE JOHNSON d/b/a JOHNSON ELECTRIC*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2003 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIFFORD C. WHITNEY, III |
| ATTORNEY FOR APPELLEE: | SCOTT JOSEPH SCHWARTZ |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 01/18/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     In this open account case where the jury returned a verdict for the defendant we are asked whether the trial court erred in denying a judgment notwithstanding the verdict. Because reasonable jurors could have arrived at a verdict of no liability, we reverse our Court of Appeals and affirm the trial court.

## FACTS

¶2.     The Court of Appeals did an excellent job of reciting the facts in this case, and they

do not need to be repeated in depth. *See **Natchez Elec. & Supply Co. v. Johnson***, 2006 Miss. App. LEXIS 118, *2-*8 (Miss. Ct. App. Feb. 14, 2006). The critical facts are as follows: Wayne Johnson operated an electrical contracting business as Johnson Electric, with 27 employees and 16 trucks. Natchez Electric is a company that sells electrical materials, and is where Johnson often purchased materials.

¶3.     According to Stacy Taggert, a manager of Natchez Electric, Johnson "was probably . . . the largest commercial contractor [Natchez Electric] was dealing with" out of their Hattiesburg branch, and over the years he has purchased "[h]undreds of thousands" of items from the company. Johnson and Taggert were "good business associates, [and] good friends;" Taggert estimated that Johnson had purchased "a little over $200,000" in materials from Natchez Electric.

¶4.     The relationship later soured when Johnson got behind on his payments to Natchez Electric. At the heart of this dispute were many allegedly unpaid invoices for material. The company ultimately sued him for the debt, which it alleged to be over $40,000. The suit was instituted under the open account statute, Miss. Code Ann. § 11-53-81 (Rev. 2002), and complied with M.R.C.P. 10(d) by attaching copies of the invoices. At trial, the jury found in favor of Johnson, but our Court of Appeals determined that Natchez Electric was entitled to multiple judgments notwithstanding the verdict. In addition, the Court of Appeals rendered the judgment that Johnson owed Natchez Electric $39,098.83.

**STANDARD OF REVIEW**

¶5.     When reviewing the denial of a JNOV, we consider the evidence in the light most favorable to the appellee, and give that party the benefit of all favorable inferences that may

2

be reasonably drawn from the evidence. ***Blake v. Clein***, 903 So. 2d 710, 731 (Miss. 2005). If the facts considered in that light point so overwhelmingly in favor of the party requesting the JNOV that reasonable persons could not have arrived at a contrary verdict, we will reverse and render. ***Id.***

¶6.     If there is substantial evidence in support of the verdict we will affirm the denial of the JNOV. ***Id.*** "Substantial evidence" is information of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions. ***Id.***

## DISCUSSION

¶7.     The primary issue before us is whether the evidence presented at trial was sufficient to defeat a motion for judgment notwithstanding the verdict. As we are bound to do, we will examine the evidence in the light most favorable to Johnson, who opposed the JNOV.

¶8.     Natchez Electric, the plaintiff in this case, put on three witnesses: Natchez Electric manager Stacy Taggert, Natchez Electric controller Kally Dennig, and Jim Rayborn, a former regular customer of Natchez Electric. Johnson's defense witnesses featured Chris Fortenberry, a former employee of Natchez Electric, Johnson himself, and Johnnie Fairchild, a former employee of Natchez Electric who worked at Robinson Electric Supply. The testimony of these witnesses can be loosely grouped into several relevant categories which we will examine in turn.

### I. The Billing System.

¶9.     There was multiple testimony that the billing system Natchez Electric used was sometimes flawed, including testimony from current employees as to this fact. Mr. Taggert

3

noted repeatedly that the system was flawed: "[w]e were using a new pricing service . . . we were working through the debugging period of that. There were problems that we should have caught that we didn't . . . ." Mr. Taggert admitted that "[w]e have made mistakes." The following exchange took place on cross-examination:

Q. Have you ever had any problems with your billings through your computer system?
A. Yes, sir, occasionally we did.
Q. Did you have any problems with your billing through your computer system with Mr. Johnson?
A. Yes, we did.

Examining some of the invoices assessed to Mr. Johnson, Mr. Taggert demonstrated that sometimes the computer billing system could result in error:

Q. Would you . . . tell the jury what the right charge should have been [for the product]?
A. . . . The right charge should have been $25 per hundred, and it states in here per each.
Q. And it also says that Mr. Johnson was charged $250 for ten of those items, correct?
A. Correct.
Q. What should he have been charged?
A. $2.50, I believe.

There were several other instances in the trial transcript where Mr. Taggert detailed how Mr. Johnson had been erroneously overcharged. On cross, Mr. Taggert admitted multiple times the invoices were flawed; when asked "[a]nd there have been incorrect amounts charged to Mr. Johnson on certain things?" he replied "Yes."

¶10. The problems with overbilling eventually resulted in a credit of $19,025 being issued to Mr. Johnson. Indeed, Natchez Electric conceded the overbilling problem. Ms. Dennig, who handled the bookkeeping duties for the company, was asked: "Obviously, Natchez

4

Electric had some billing problems and some invoicing problems and some computer problems dealing with Mr. Johnson's account because a $19,025 credit for over-billing was issued?" The bookkeeper answered simply "correct." At one point, a letter was introduced into evidence that was written by Natchez Electric's bookkeeper and sent to Mr. Johnson's bookkeeper; it included the language "Sorry for the problems my mess-up is causing."

## II. Problems with Staff.

¶11. In addition to the multiple problems with the computer system and overbilling which Natchez Electric admitted, there was some evidence of a human problem. While it was denied by Natchez Electric, this version of events was founded on a theory that Natchez Electric had discovered that Chris Fortenberry, an employee, had been stealing from the company and had overbilled Mr. Johnson to cover his theft. At trial, Mr. Fortenberry testified to the following:

Q.  And what did Mr. Taggert tell you?
A.  It was on a situation to where Wayne [Johnson] had gone and Mr. Taggert had -- I would say accused me of taking material and billing Wayne out for it.
Q.  What did Mr. Taggert tell you about that yesterday?
A.  He said all they were doing is looking to see about it, but it didn't really mean anything. I was just one of, like he said, one of three or four people they were looking at in the store at that time.
Q.  Were you aware that Mr. Taggert told Wayne that someone was selling stuff out the back door at Natchez [Electric]?
A.  Yes, sir.
         . . .
Q.  Are you aware that Mr. Taggert told Wayne [Johnson] that somebody was selling stuff out the back door, charging it to his account, and that was what was causing the problem with his account?
A.  Yeah, Wayne [Johnson] told me that.
Q.  And did Mr. Taggert acknowledge that to you last night?
A.  Yeah, uh-huh.

Mr. Fortenberry denied that he stole from the company. Mr. Taggert explicitly denied this version of events, although he did admit to firing Mr. Fortenberry because of the money owed back to Mr. Johnson:

> Q. And wasn't it about that same time that Mr. Fortenberry was dismissed from service with Natchez Electric?
> A. The day this credit [to Mr. Johnson for $19,025] was written, he was.
> Q. He was fired; is that correct?
> A. Correct, due to the credit.

**III. Accuracy of the Invoices.**

¶12. Natchez Electric admitted at trial that some of the allegedly unpaid invoices for which the company sued Mr. Johnson were inaccurate. After it was determined that Mr. Johnson was owed a $19,000 credit due to overbilling, the credit was applied to his account. However, the credit was not necessarily applied to the faulty invoice itself.

¶13. For example, Mr. Taggert testified that Mr. Johnson bought a number of bank plates; he should have been charged 25 cents, but was instead charged $2.50. He was ultimately overcharged $247.50 for the items. When the discrepancy was discovered, and credit issued, it was not applied to that faulty invoice. Instead, it was applied at Mr. Johnson's request to some of his older debt with Natchez Electric.

¶14. Accordingly, the invoices upon which Natchez Electric based its suit were often flawed. Mr. Taggert admitted this on cross-examination:

> Q. You give [Mr. Johnson credit] in one hand and take it back in the other.
> A. No, sir, he's already taken the credit.
> Q. It's not reflected on the invoices, is it?
> A. Not on these individual invoices, no.
> Q. It's not reflected in the amount that you sued for?
> A. No, it's not reflected in that amount.
>     . . .

6

Q. You sued on these invoices?

A. Yes, sir.

Q. Not on some from ten years ago. You sued on these invoices. These invoices have errors in them; do they not?

A. Yes, they do.
. . .

Q. Well, you keep telling us that you reduced what [Mr. Johnson] owed by $19,000. Show me on these invoices where you reduced the errors that are in these invoices from what you sued him on. That's what I'm asking.

A. I can't show you on these invoices.

Q. Because it doesn't exist, does it?

A. Not on these invoices, no.

Q. Okay.
. . .

Q. One other thing. I think you'll agree with me that there are some invoices that are in there that are in error?

A. Yes.

Q. And those invoices are a part of this lawsuit?

A. Yes.
. . .

Q. And there have been incorrect amounts charged to Mr. Johnson on certain things?

A. Yes.

### IV. The Case at Hand.

¶15. Even after considering this information, the Court of Appeals concluded that "Johnson's evidence of non-delivery was insufficient to create a factual dispute for the jury as to whether the materials actually were delivered to Johnson." 2006 Miss. App. LEXIS at *12-13. This confuses the actual burden that was placed on Mr. Johnson, or on any person who finds themself defending an open account suit.

¶16. Natchez Electric repeatedly admitted at trial that the invoices which formed the basis of their suit were "in error" and that there were numerous problems with the billing system. While it was disputed whether there was a thief at Natchez Electric who stole materials and

falsified tickets assessing the debt to Mr. Johnson, it is undisputed that Mr. Fortenberry was fired due to the $19,025 credit issued to Mr. Johnson.

¶17. Our Court of Appeals placed the burden squarely on Mr. Johnson, but it has long been our law that the burden of proof is initially on the party seeking to establish the debt. ***Neal v. Hooper***, 153 Miss. 884, 885-86, 122 So. 103 (1929). In the eyes of the jury, Natchez Electric failed to do this, and indeed admitted that it could not. We cannot substitute our judgment for that of the jury and say that a reasonable juror could not have found the debt claimed by Natchez Electric was not proven when the company admitted it was flawed.

¶18. Even if Natchez Electric had established the correctness of the debt, there are multiple defenses one might assert in an open account suit, primary among them non-delivery and lack of indebtedness. Mr. Johnson did not say that his defense was payment, or satisfaction, which would have shifted the burden to him. *See **Philley v. Toler***, 239 Miss. 347, 362, 123 So. 2d 233, 229 (1960) (in an open account case, party has "the burden of proof to show payment under [a] plea of payment," because "[t]he burden of proving payment is upon him who asserts it"); *compare **Graham v. Pugh***, 417 So. 2d 536, 540-41 (Miss. 1982) ("A plea of the statute of limitations is an affirmative defense and carrying the burden of proof lies on the party who relies upon that defense") (citing ***Philley***).

¶19. Instead, Mr. Johnson's defense was that the invoices were inaccurate. That is, the invoices were so flawed, overbilling so commonplace, theft and fraud were present in the company, all of which supported his theory that the debt did not exist. He then put on proof to support his defense of inaccuracy or lack of debt. That Natchez Electric had already credited Mr. Johnson $19,025 due to billing errors certainly carried weight with the jury.

8

¶20.   In today's digital world, a defense of total inaccuracy may not be commonplace, but in light of the ample evidence above, and taking it in the light most favorable to Mr. Johnson, we cannot say that no reasonable juror could arrive at the verdict reached in the trial below.

**CONCLUSION**

¶21.   We are bound by our standard of review to never substitute our judgment for that of the jury, and we cannot declare a judgment notwithstanding the verdict when reasonable minds could reach a different conclusion.  Because there was substantial evidence supporting the jury's finding that Mr. Johnson was not indebted to Natchez Electric, the judgment of the Court of Appeals is reversed, and the judgment of the Forrest County Circuit Court is reinstated and affirmed.

¶22.   **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J.**

**EASLEY, JUSTICE, DISSENTING:**

¶23.   I respectfully dissent from the majority's reversal of the Court of Appeals' judgment that the trial court erred in denying Natchez Electric & Supply Co., Inc.'s motion for J.N.O.V.  In my opinion, the Court of Appeals was correct in its determination that Natchez Electric demonstrated that Wayne Johnson D/B/A Johnson Electric was indebted to Natchez Electric in the amount of $39,098.83.[1]  In a majority opinion authored by Judge Chandler the

---

[1] The Court of Appeals arrived at the $39,098.83 amount by adjusting the $41,794.45 amount outstanding by $2,695.62 for the invoices that lacked an attached

9

unanimous Court of Appeals reasoned as follows:

> The question of Natchez Electric's entitlement to a JNOV implicates the burdens of proof applicable to a suit on an open account. "An open account is a type of credit extended through an advance agreement by a seller to a buyer which permits the buyer to make purchases without a note of security and is based on an evaluation of the buyer's credit." *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 914 (Miss. 1993). An open account is an unwritten contract. *McArthur v. Acme Mechanical Contractors, Inc.*, 336 So. 2d 1306, 1308 (Miss. 1976). In essence, a suit on an open account is "an action to collect on a debt created by a series of credit transactions." *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 644 (Miss. 1996).

> The burdens allocated to the plaintiff and defendant in an open account suit formerly were established by statute. Miss. Code Ann. § 11-7-45; § 13-1-141 (repealed). Section 11-7-45 required the plaintiff to attach to the complaint a copy of the account showing the date of purchase, the kind of goods, the quantity, and the price. *Motive Parts Warehouse, Inc. v. D&H Auto Parts Co., Inc.*, 464 So. 2d 1162, 1165 (Miss. 1985). Pursuant to section 13-1-141, the plaintiff could attach to the complaint an affidavit attesting to the correctness of the account and stating that it was due from the defendant. *Id.* at 1164-65. The affidavit entitled the plaintiff to judgment unless the defendant filed a counter-affidavit averring that the account was not correct and particularizing wherein it was not correct. *Id.* at 1165. By submitting a counter-affidavit, the defendant admitted the existence of the account but denied its correctness. *Walker v. Cleveland Lumber Co., Inc.*, 512 So. 2d 695, 696 (Miss. 1987). In the presence of a counter-affidavit, "the affidavit to the account [entitled] the plaintiff to judgment only for such part of the account as the defendant by his affidavit [did] not deny to be due." *Motive Parts Warehouse, Inc.*, 464 So. 2d at 1165 (quoting Miss. Code Ann. 13-1-141 (repealed)).

> "The statutes provided a rule of evidence whose purpose was to dispense with proof of the correctness of the account." *Id.* at 1165. Prior to their repeal, the evidentiary effect of these statutes was obviated by the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence. *Key Constructors Inc. v. H&M Gas Co.*, 537 So. 2d 1318, 1322 (Miss. 1989). Now, pursuant to Mississippi Rule of Civil Procedure 10(d), a claim or defense founded on an account must be accompanied by a copy of the account attached to the pleading

---

delivery ticket or had a blank delivery ticket attached. *See Natchez Elec. & Supply Co. v. Johnson*, 2006 Miss. App. LEXIS 118, 18 (Miss. Ct. App. 2006).

"unless sufficient justification for its omission is stated in the pleading." The parties' burdens of proof are those applicable to other claims governed by the Mississippi Rules of Civil Procedure. *Id.* at 1323.

*Natchez Elec.*, 2006 Miss. App. LEXIS 118 at 9-11.

¶24. This Court has repeatedly set forth the standard of review and requirements necessary to establish that a J.N.O.V. is appropriate. In *Wilson v. GMAC*, 883 So. 2d 56, 63-4 (Miss. 2004), we stated:

> A motion for JNOV made under the procedural vehicle of M.R.C.P. 50 (b), requires the trial court to test the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence. *Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994). *See* M.R.C.P. 50 (b). In order to rule on a motion for JNOV, the trial court is required to consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. *Corley v. Evans*, 835 So. 2d 30, 36 (Miss. 2003) (quoting *Goodwin v. Derryberry Co.*, 553 So. 2d 40, 42 (Miss. 1989)).

> "If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." *Corley*, 835 So. 2d at 37. *See also Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997); *Bankston v. Pass Road Tire Ctr., Inc.*, 611 So. 2d 998, 1003 (Miss. 1992); *McMillan v. King*, 557 So. 2d 519, 522 (Miss. 1990). Furthermore, when the plaintiff fails to establish a prima facie case showing the elements of the cause of action, JNOV is proper. *Bankston*, 611 So. 2d at 1001.

> "On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required." *Corley*, 835 So. 2d at 37. *See also McMillan*, 557 So. 2d at 522.

> In reviewing a circuit court decision on a motion for JNOV, this Court does not defer to the circuit court's decision but rather reviews the matter de novo. *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995).

*Wilson*, 883 So. 2d at 63-64; *see also White v. Stewman*, 932 So. 2d 27, 32-33 (Miss. 2006).

11

¶25.	Here, the Court of Appeals correctly held "that Natchez Electric's proof of the correctness of the debt evidenced by the delivery tickets with signatures, printed names, and for directly shipped items was such as to have entitled Natchez Electric to a JNOV." ***Natchez Elec.***, 2006 Miss. App. LEXIS 118 at 13. The court further determined "that, in light of the evidence of the correctness of the account, Johnson's proof of the account's incorrectness had to be more specific than his general allegations of billing errors." ***Id***. In its detailed analysis of the evidence supporting the grant of a J.N.O.V. in favor of Natchez Electric, the court stated:

> At the trial, it was established that the custom and practice of the electrical supply industry was for the supplier to obtain the signature of the person receiving materials. Johnson admitted that a signed delivery ticket constituted proof of delivery. Johnson wholly failed to submit any evidence, beyond his own nebulous allegations, that any outstanding invoice contained a billing error for which he had not already been credited. Thus, Johnson failed to present sufficient evidence from which the jury could have concluded that he was not indebted to Natchez Electric in the amount reflected by the signed delivery tickets and their associated invoices.

> Further, Johnson never refuted the testimony of [Stacy] Taggert and [Chris] Fortenberry that he had instructed his employees to accept material from Natchez Electric without signing a delivery ticket. In fact, Johnson admitted to having picked up material from Natchez Electric without signing a delivery ticket. Taggert and Fortenberry testified that, when Johnson or his employees picked up material without signing for it, a Natchez Electric employee would print the name of the person having received the materials. In rebuttal, Johnson testified that Fortenberry was selling material "out the back door" and billing it to Johnson's account. But, Johnson did not point to any specific billing error caused by theft by Fortenberry. Beyond his testimony that he did not receive all of the materials billed, Johnson presented no evidence that he did not get a specific item. While Johnson's testimony could have cast some doubt upon the correctness of the account, his uncorroborated allegations of theft by Natchez Electric employees, with nothing more specific, was insufficient to enable a reasonable juror to reject Natchez Electric's proof that Johnson had received the materials listed on the delivery tickets bearing printed names.

12

Natchez Electric was also entitled to a JNOV concerning certain delivery tickets showing that the listed items had shipped directly from the manufacturer to Johnson. Taggert testified that Natchez Electric's delivery tickets for direct shipments would not bear the recipient's signature because the signature would appear on the shipper's delivery receipt. Johnson admitted that a delivery ticket for a direct shipment would not bear a signature. There was no evidence from which a reasonable jury could have found that Johnson was not indebted for invoices associated with delivery tickets for directly shipped materials.

We address the matter of the invoices with associated "blank" delivery tickets bearing no signature or printed name. As previously stated, it was established that the custom and practice of the electrical supply industry was for the supplier to obtain the signature of the recipient of materials. It was further established that the ordinary course of business between Natchez Electric and Johnson was for Johnson's employees often to pick up materials without signing, and then for a Natchez Electric employee to print the recipient's name on the delivery ticket as proof of delivery. Based on this evidence of the industry custom and the parties' own practice, the delivery tickets with no signed or printed name were not sufficient proof that material had been delivered to Johnson to entitle Natchez Electric to a JNOV. Therefore, we affirm the jury's finding that Johnson was not indebted to Natchez Electric concerning any invoice associated with a blank delivery ticket.

We last address the matter of the invoices for materials used on Johnson's Red Lobster job. At any given time, Johnson was working on several electrical jobs. Taggert and Fortenberry testified that Natchez Electric employees noted on each invoice the job for which the materials were intended based upon instruction from Johnson's employees. Johnson testified that he bought all of his material for the Red Lobster job from Robinson Electric, not from Natchez Electric. Johnson surmised that Natchez Electric had billed him for materials he had bought elsewhere. Johnson admitted that he never compared his materials invoices from Natchez Electric and Robinson with his materials records for the Red Lobster job. We find there was insufficient evidence to distinguish the Red Lobster invoices from the other invoices admitted at the trial. Viewing the evidence in the light most favorable to Johnson, Johnson's testimony was too speculative to enable a reasonable juror to conclude that Johnson did not receive the invoiced Red Lobster materials in the face of a delivery ticket bearing a signature or printed name, or for directly shipped items.

In conclusion, we find that there was insufficient evidence to support the jury's finding that Johnson was not indebted to Natchez Electric. We have reviewed the evidence adduced by both parties at the trial and find that Natchez

Electric was entitled to a JNOV concerning all of the invoices associated with signed delivery tickets, delivery tickets with printed names, and delivery tickets for directly shipped items. Concerning these invoices, the evidence pointed so overwhelmingly in favor of Natchez Electric that reasonable jurors could not have arrived at a finding for Johnson. *Blake [v. Clein]*, 903 So. 2d [710] at 731. We reverse and render a verdict for Natchez Electric in the amount of $ 39,098.83, the amount reflected by the above listed invoices. We affirm the jury's finding of no liability concerning the invoices accompanied by "blank" delivery tickets.

*Natchez Elec.,* 2006 Miss. App. LEXIS 118 at 13-18.

¶26. For all the foregoing reasons, I conclude that the trial court should have granted Natchez Electric's motion for J.N.O.V. Accordingly, I would affirm the judgment of the Court of Appeals affirming in part and reversing and rendering in part the trial court's judgment.

**SMITH, C.J., JOINS THIS OPINION.**