809 So.2d 679 (2001)
The KROGER COMPANY, Appellant,
v.
Loraine SCOTT, Appellee.
No. 1999-CA-01981-COA.
Court of Appeals of Mississippi.
June 12, 2001.
Rehearing Denied August 21, 2001.
Certiorari Denied March 7, 2002.
*681 William O. Luckett, Jr., Clarksdale, Jonathan Masters, Attorney for Appellant.
Ellis Turnage, Cleveland, Attorney for Appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
*682 THOMAS, J., for the court:
¶ 1. Kroger appeals a jury verdict for Loraine Scott in the sum of $74,000 for a slip and fall injury that occurred in the foyer of the store, asserting the following issues:
I. TRIAL COURT ERRED DENYING KROGER'S MOTION FOR DIRECTED VERDICT.
II. THE DAMAGE AWARD SHOCKS THE CONSCIENCE AND IS A RESULT OF BIAS AND PREJUDICE.
III. "FUTURE DAMAGES" SHOULD NOT HAVE BEEN INCLUDED IN SCOTT'S JURY INSTRUCTION NUMBER FIVE.
IV. TRIAL COURT ERRED IN ALLOWING SCOTT'S PEREMPTORY STRIKES.
V. COUNSEL FOR SCOTT MADE IMPROPER COMMENTS DURING CLOSING ARGUMENTS, DENYING KROGER ITS RIGHT TO A FAIR TRIAL.
VI. FAILING TO ADMIT THE FULL INCIDENT REPORT WAS REVERSIBLE ERROR.
VII. ALLOWING COUNSEL FOR SCOTT TO CROSS EXAMINE STEVE SCHWARTZ REGARDING THE DESIGN ENTRANCE DOOR WAS REVERSIBLE ERROR.
VIII. ALLOWING COUNSEL FOR SCOTT TO QUESTION SCOTT AS TO "WHY SHE WANTS $74,000" IN DAMAGES WAS REVERSIBLE ERROR.
IX. ALLOWING SCOTT TO TESTIFY ABOUT HER PERCEIVED LOSS OF CREDIT STANDING WAS REVERSIBLE ERROR.
Finding no error, we affirm.

FACTS
¶ 2. On March 18, 1996, Loraine and Floyd Scott arrived at Kroger in Cleveland, Mississippi at approximately 9:45 a.m. Ms. Loraine Scott ran ahead of her husband, Mr. Floyd Scott, because it was raining heavily. Ms. Scott waited for Mr. Scott upon reaching the door of the building. The door to the Kroger store is an electronic door which automatically swings open as a customer approaches. As the Scotts entered the store, Mr. Scott yelled "watch it!" as he noticed the wet floor that Ms. Scott was approaching. However, Ms. Scott slipped and fell on the wet floor.
¶ 3. Steve Schwartz, the Kroger store manager, was aware of the rain storm and had been checking the area of the foyer approximately every fifteen minutes for any possible hazards. He made sure that mats were down and caution signs were placed in the foyer area. He also personally mopped the foyer area at approximately 9:30 a.m. However, a mat could not be placed in the floor space in which the automatic swinging door moved. It was in this area that Ms. Scott fell.
¶ 4. Mr. Schwartz was notified soon after Ms. Scott had been injured. He helped Mr. Scott place Ms. Scott in their vehicle. Mr. Scott immediately drove Ms. Scott to the Bolivar Medical Center in Cleveland. Ms. Scott was diagnosed and treated for a bimalleolar fracture to the right ankle. Her total medical costs were $1660.75.
¶ 5. During a visit to the treating doctor, Dr. Barr, following her release in September 1997, Ms. Scott stated that she was doing well and was not having any problems. However, Dr. Barr, who was accepted by the court as an expert witness, further testified that Ms. Scott's ankle will be more susceptible to osteoarthritis as she gets older due to the injury incurred. Ms. Scott also testified that despite her *683 maximum medical recovery, she still experiences pain and swelling in her ankle and requires over the counter pain medication in order to treat such symptoms.

ANALYSIS

I. DID THE TRIAL COURT ERR IN DENYING KROGER'S MOTION FOR DIRECTED VERDICT?
¶ 6. The standard of review for jury verdicts in this state is well established. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997). See also Junior Food Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss.1996); Wirtz v. Switzer, 586 So.2d 775 (Miss. 1991); Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). Our standard for review is de novo in passing on questions of law. Mississippi Farm Bureau Casualty Ins. Co. v. Curtis, 678 So.2d 983, 987 (Miss.1996); Seymour v. Brunswick Corp., 655 So.2d 892, 895 (Miss.1995).
¶ 7. In Jerry Lee's Grocery, Inc., 528 So.2d at 295, our supreme court held that: "the owner or operator of business premises owes a duty to an invitee to exercise reasonable care, to keep the premises in a reasonably safe condition and, if the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988).
¶ 8. Further, our supreme court provided the following rule in Fulton v. Robinson Industries, Inc., 664 So.2d 170, 175 (Miss. 1995):
The entire body of slip and fall case law combined with this Court's latest pronouncements on the open and obvious doctrine can be summed up in these black letter conclusions:
(1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger. Goodwin v. Derryberry Co., 553 So.2d 40 (Miss.1989).
(2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question. Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646 (Miss. 1988).
(3) if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger. Tharp v. Bunge Corp., 641 So.2d 20 (Miss.1994); Tate v. Southern Jitney Jungle, 650 So.2d 1347 (Miss.1995); Baptiste v. Jitney Jungle, 651 So.2d 1063 (Miss.1995); Downs v. Choo, 656 So.2d 84 (Miss. 1995).
Fulton, 664 So.2d at 175.
¶ 9. Upon our review of the record herein, we find that the first Fulton scenario applies to the case at hand. Ms. Scott was an invitee, who was injured due to a wet floor in the foyer of Kroger which was immediately adjacent to the major entrance and exit of the store, and the wet condition of the floor was caused by a natural event. Therefore, a jury question existed as to the openness and obviousness *684 of the danger presented by the rain on the floor in the foyer of the Kroger. This question was presented to a jury who returned a verdict for Scott. Similarly, we held in Breland v. Gulfside Casino Partnership, 736 So.2d 446 (Miss.Ct.App.1999), that the first Fulton scenario applied when Breland slipped and fell while declining the casino's outdoor stairway exit which was wet due to a rainstorm. Therefore, we affirm.

II. DID THE DAMAGE AWARD SHOCK THE CONSCIENCE OF THE COURT AND IS IT A RESULT OF BIAS AND PREJUDICE?
¶ 10. The jury's verdict in a civil case is a finding of fact. Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985). If there is substantial evidence to support the jury award, or if the award is not so large or inadequate as to shock the conscience of the court, or is not the result of bias, passion or prejudice on the part of the jury, this court will not reverse an award of damages. Purina Mills, Inc. v. Moak, 575 So.2d 993, 997 (Miss.1990). See also Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992); Motorola Communications & Elec., Inc. v. Wilkerson, 555 So.2d 713, 723 (Miss.1989). "Even if we think the amount awarded in the verdict is liberal, we are not allowed to supplant our judgment for that of the jury unless we conclude that there was insufficient evidence to support the award of damages or that the verdict was the product of bias, passion or prejudice." Cade v. Walker, 771 So.2d 403, 406 (Miss.Ct.App.2000) (citing South Cent. Bell Tel. Co., Inc. v. Parker, 491 So.2d 212, 217 (Miss.1986)).
¶ 11. The damages awarded in the case at hand do not "shock the conscience of the court." Kroger has not shown that the damage amount awarded was a result of bias, passion or prejudice on the part of the jury. Due to the uncertainty of the monetary value placed on pain and suffering and future damages, we have affirmed damages up to fifty-one times the actual damages shown. Cade, 771 So.2d at 409. See also General Motors Corp. v. Pegues, 738 So.2d 746, 755 (Miss.Ct.App.1998) (not grossly excessive when damages awarded were nineteen times greater than the actual damages shown). The damages awarded in the case at hand were roughly forty-five times the actual damages. Therefore, we will not reverse this award of damages.

III. SHOULD "FUTURE DAMAGES" HAVE BEEN INCLUDED IN SCOTT'S JURY INSTRUCTION NUMBER FIVE?
¶ 12. Jury instruction number five stated:
You may consider the following facts in determining the amount of damages as has been shown by a preponderance of the evidence, if any.
Z3
(2) Past, present, future physical pain and suffering, if any of Loraine Scott.
Kroger asserts that permitting this jury instruction constituted manifest error due to the fact that no evidence was presented to show that future damages would be suffered. However, Ms. Scott testified that her ankle continues to swell and hurt at times. Dr. Barr also testified that, "any ankle that has suffered a bimalleolar fracture is more susceptible to osteoarthritis in the future."
¶ 13. A similar argument was presented in Illinois Central Railroad Co. v. Clinton, 727 So.2d 731, 736 (Miss.Ct.App.1998), where the appellant argued that the trial court erred in allowing jury instructions pertaining to future damages because the expert witness who testified for the appellee could not predict for certain whether pain and suffering would continue or *685 whether further difficulties would arise. In response to such argument, we held that:
We find no error in the trial court's permitting Dr. Turnbull to testify, and likewise we find no error in the court's permitting the jury to consider future damages. This Court does not examine jury instructions in isolation; "rather, they are read as a whole to determine if the jury was properly instructed." Boone v. Wal-Mart Stores, Inc., 680 So.2d 844, 845 (Miss.1996). A combined reading of the jury instructions presented at the trial in this case reveals that the jurors were provided with the direction they needed in order to render a fair verdict. Accordingly, the trial judge committed no reversible error in allowing Clinton's instructions.
Illinois Cent. R.R. Co. v. Clinton, 727 So.2d 731, 736 (Miss.Ct.App.1998). Furthermore, our supreme court has held that an admission of expert medical testimony over objection concerning the development of joint arthritis in the future was proper. GMAC v. Layton, 353 So.2d 749, 752 (Miss.1977). Likewise, we hold that Dr. Barr's testimony concerning the possibility of future pain and other such difficulties was admissible. Such expert testimony coupled with the testimony of Ms. Scott herself complaining of pain and swelling is enough evidence to support a jury instruction to consider future damages. Therefore, we affirm.

IV. DID THE TRIAL COURT ERR IN ALLOWING SCOTT'S PEREMPTORY STRIKES?
¶ 14. This Court will not reverse any factual findings relating to a Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), challenge unless they are clearly erroneous. Henley v. State, 729 So.2d 232, 239 (Miss.1998). "To determine whether a party improperly used a peremptory challenge to discriminate against a potential juror, the objecting party must first make a prima facie showing of discrimination that race was the criteria for the exercise of challenge." Stewart v. State, 662 So.2d 552, 557-58 (Miss.1995). The burden then shifts to the party exercising the challenge [proponent] to offer a nondiscriminatory reason for its strike. Id. It is then left to the trial court to determine whether the objecting party has met its burden to prove there has been purposeful discrimination in exercise of the challenge. Id.
¶ 15. After review of the race neutral reasons given for each strike, we affirm. Three white members and one black member of the jury were struck as a result of Ms. Scott's peremptory strikes. Juror number four was struck due to lack of eye contact. This has been held to be a race neutral and acceptable reason for a peremptory strike. Davis v. State, 767 So.2d 986, 995 (Miss.2000). Juror number eight was struck because he was related to an assistant chancery clerk and the chief of the county sheriff's department. This has been held to be a race neutral and acceptable reason for a preemptive strike. Mhoon v. State, 464 So.2d 77, 80-1 (Miss. 1985). Juror numbers ten and eighteen were struck because of their occupations, or lack thereof. This has been held to be a race neutral and acceptable reason for a peremptory strike. Robinson v. State, 761 So.2d 209, 211 (Miss.2000). Kroger offered no rebuttal evidence to Scott's race neutral explanations for peremptory strikes. Therefore, the trial court properly based its decision on Scott's explanations. Bush v. State, 585 So.2d 1262 (Miss. 1991).

V. DID COUNSEL FOR SCOTT MAKE IMPROPER COMMENTS DURING CLOSING ARGUMENTS, *686 DENYING KROGER ITS RIGHT TO A FAIR TRIAL?
¶ 16. The test in determining whether a counselor has made an improper argument which requires reversal is whether the "natural and probable effect of the improper argument" creates an "unjust prejudice" against the opposing party, resulting "in a decision influenced by the prejudice so created." Davis v. State, 530 So.2d 694, 701-2 (Miss.1988).
¶ 17. Our supreme court further explained in Clemons v. State, 320 So.2d 368, 371 (Miss.1975) that:
So long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed; but, when he departs entirely from the evidence in his argument, or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence, the trial judge should intervene to prevent an unfair argument.
Clemons, 320 So.2d at 371. It has also been established that:
While an attorney making a closing argument may not make remarks which are unfairly calculated to arouse passion or prejudice, and while we do not condone appeals to sectional prejudices of the jury, the control of such argument is left largely to the discretion of the trial judge, who is in a much better position to observe and determine what is improper.
James W. Sessums Timber Co., Inc. v. McDaniel, 635 So.2d 875, 882 (Miss.1994).
¶ 18. The comments made during the closing arguments did not create an unjust prejudice against Kroger. Furthermore, Kroger did not make a contemporaneous objection to the closing remarks now complained of or make a motion for a mistrial. Failure to raise a contemporaneous objection constitutes a waiver of the issue on appeal. Gatlin v. State, 724 So.2d 359 (¶ 43)(Miss.1998). This issue is procedurally barred. Therefore, we affirm.

VI. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY DENYING THE ADMISSION OF THE FULL INCIDENT REPORT?

VII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING COUNSEL FOR SCOTT TO CROSS EXAMINE STEVE SCHWARTZ REGARDING THE DESIGN ENTRANCE DOOR?

VIII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING COUNSEL FOR SCOTT TO QUESTION SCOTT AS TO "WHY SHE WANTS $74,000" IN DAMAGES?

IX. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING SCOTT TO TESTIFY ABOUT HER PERCEIVED LOSS OF CREDIT STANDING?
¶ 19. While Mississippi rules of evidence were mentioned in each of these arguments, these issues were asserted without cited authority. "We remain steadfast to rule that failure to cite any authority may be treated as a procedural bar, and we are under no obligation to consider the assignment." McClain v. State, 625 So.2d 774, 781 (Miss.1993). See also Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992); R.C. Petroleum Co., Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Read v. Southern Pine Electric Power Assn., 515 So.2d 916, 921 (Miss. 1987). The Mississippi Supreme Court made it clear long ago that:

*687 It is a strange case upon which, in these days of tens of thousands of law books, no authority can be found, and when none is presented and the proposition is not manifestly well taken, there is the practical presumption that the authorities do not sustain the proposition, else they would have been cited. The courts frequently speak of such unsupported propositions as having been waived because of the failure to properly present them.
Johnson v. State, 154 Miss. 512, 122 So. 529 (1929).
¶ 20. Nevertheless, despite the lack of authority for each of these issues, we will briefly review each issue.

A. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY DENYING THE ADMISSION OF THE FULL INCIDENT REPORT?
¶ 21. After review of the record, we find that failing to admit the second and third pages of the incident report did not amount to reversible error.
¶ 22. Kroger asserts that the second and third pages of the incident report, which was authored by Mr. Schwartz, were errantly not admitted into evidence by the lower court. The first page of the report, which was admitted, was a standard form used in the event of an accident on the store's premises. The second and third pages were notebook pages where Mr. Schwartz explained his impression of how the injury occurred as well as his opinion of whether Kroger was negligent. Outside of Mr. Schwartz's opinion, all of the information in the second and third pages were also clearly stated on the first page. Therefore, with the exception of Mr. Schwartz's opinion of Kroger's negligence, the evidence was cumulative.
¶ 23. The comment to the Mississippi Rules of Evidence, Rule 803(6) states: "It is important to note that the custodian as well as other qualified witnesses may testify." M.R.E. 803(6) cmt. Thus, it is not necessary to call or to account for all participants who made the record. MRE 803(6). Therefore, admitting both the incident report as well as the testimony of the author of the report is unnecessary. To admit both would produce cumulative evidence that merely bolsters one or the other. "In a long line of cases [our supreme court] has held that a witness cannot be bolstered and corroborated by proving that on other occasions he has made statements out of court conforming to his testimony given in court." Harrison v. Gatewood, 211 Miss. 121, 51 So.2d 59, 61 (1951).
¶ 24. Another relevant portion of this comment states:
the source of the material must be an informant with knowledge who is acting in the course of the regularly conducted activity. This is exemplified by the leading case of Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930), which is still the applicable law today under the rule. That case held that a police report which contained information obtained from a bystander was inadmissible; the officer qualified as one acting in the regular course of a business, but the informant did not.
M.R.E. 803(6) cmt. Mr. Schwartz did not personally witness the accident, but only the end result as well as the safety condition of the store prior to the accident. So, much of the context provided on the second and third pages of the incident report including his opinion of negligence were hearsay due to the fact that Mr. Schwartz was not the original source of the information. Therefore, we affirm.

*688 B. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING COUNSEL FOR SCOTT TO CROSS EXAMINE STEVE SCHWARTZ REGARDING THE DESIGN ENTRANCE DOOR?
¶ 25. Neither the placement of the door nor the design of the door had any bearing on the verdict. The Mississippi Supreme Court has made it clear that "for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Terrain Enter., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995) (citing Hansen v. State, 592 So.2d 114 (Miss.1991)). There is no indication that the verdict would have varied had the objection to the testimony involving location or design of the entrance door been sustained. Therefore, this is harmless error.

C. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING COUNSEL FOR SCOTT TO QUESTION SCOTT AS TO "WHY SHE WANTS $74,000" IN DAMAGES?
¶ 26. Kroger argues that Ms. Scott's opinion testimony as to "why she [wanted] $74,000" in damages was inadmissible. Kroger cites MRE 602 and 701 in support of this argument. It would be hard to prove that a person who is injured does not have "personal knowledge of the matter as opposed to a mere opinion, in order to testify." MRE 602. Ms. Scott's testimony merely showed the pain and suffering that she experienced which caused her to seek compensation. This testimony was both rationally based on the perception of the witness and helpful to the clear understanding of the determination of a fact in issue, being the pain and suffering endured. Therefore, we affirm.

D. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING SCOTT TO TESTIFY ABOUT HER PERCEIVED LOSS OF CREDIT STANDING?
¶ 27. Even where an error has occurred, we will not reverse a lower court's verdict when it is supported by the overwhelming weight of the evidence. The Mississippi Supreme Court has made it clear that "for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Terrain Enter., Inc., 654 So.2d at 1131 (citing Hansen v. State, 592 So.2d 114 (Miss. 1991)). There is no indication that the verdict would have varied had the objection to the testimony involving loss of credit standing been sustained. Therefore, this is harmless error.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur. KING, P.J., concurs in result only. McMILLIN, C.J., dissents with separate opinion joined by SOUTHWICK, P.J.
McMILLIN, C.J., dissenting:
¶ 29. I dissent. In my view, it is incorrect to say that it is always a jury question as to whether a wet floor at the entryway of a retail business in the midst of a heavy rain demonstrates negligence on the part of the premises owner. Kroger was not obligated to guarantee Scott an entirely hazardous-free premises. Anderson v. *689 B.H. Acquisition, Inc., 771 So.2d 914(¶ 7) (Miss.2000); see also Wallace v. J.C. Penney Co., 236 Miss. 367, 109 So.2d 876, 879-80 (1959) (citing S.S. Kresge Co. v. Fader, 116 Ohio St. 718, 724, 158 N.E. 174 (1927)). Rather, the law required only that Kroger take all reasonable precautions to make the premises safe for its customers and to adequately warn of those conditions that could not be corrected which might pose some hazard beyond the ordinary. Anderson, 771 So.2d at (¶ 7); see also F.W. Woolworth Co. v. Stokes, 191 So.2d 411, 417-18 (Miss.1966).
¶ 30. The facts of this case show that Scott slipped and fell at the store's threshold in an area defined within the arc of the automatic-opening entrance door. The evidence was undisputed that Kroger officials had taken every reasonable precaution to minimize the potential hazards arising out of a circumstance entirely beyond Kroger's ability to control, i.e., that the community where this store was located was in the midst of a driving rainstorm. The sole cause of Scott's fall was that the floor was wet in an area where, because of the opening and closing of the entrance door, it was impossible to install a mat or other temporary water-absorbing surface during inclement weather. When it rains, it is to be expected and is, in fact, inevitable that areas of high pedestrian traffic near the entrance to a building will get wet. There is no proof of excessive buildup of water, no proof that a more frequent mopping schedule would have alleviated the problem, no proof that the floor was of an inappropriate material that became unreasonably slick when wet, and not even an allegationmuch less proofthat the design of the entryway gave rise to an unreasonably hazardous situation during rainy periods. In short, there is no evidence in this record of any specific act or failure to act on the part of Kroger that proximately caused Scott to fall beyond uninformative suggestions of some unspecified "breach of duty."
¶ 31. That is not enough to sustain a finding of negligence on the part of Kroger. Justice Oliver Wendell Holmes, in his treatise entitled The Common Law, wrote critically of "the featureless generality" of the law of negligence and said that, over time, this generality ought to give way to a specific duty where the defendant is "bound to use this or that precaution under these or those circumstances." Oliver Wendell Holmes, Jr., The Common Law 111 (Dover Publications 1991) (1881). To do otherwise, according to Holmes, is to hold the defendant to a standard of conduct that the court, even after the fact, cannot define in any terms beyond vague and unenlightening generalities. Id.
¶ 32. If this Court cannot, after reviewing the evidence in this case, discover and articulate a specific duty on Kroger's part and then declare with a reasonable measure of certainty how the evidence showed Kroger to have breached that duty, then we ought to say that the plaintiff has failed in her proof. The precautions undertaken by Kroger in a situation such as this must be reasonable, and the question of reasonableness must certainly be subject to judicial review. There is, for instance, the proposition that the ultimate safeguard would be for Kroger to close its store each time it begins to rain. Were the plaintiff to bring a case on that theory and prevail before the jury, would an appellate court not be permitted to consider the reasonableness of that standard of care? I would think so. In this case, though, we cannot even reach the issue of the reasonableness of Kroger's actions (or inaction) that allegedly led to Scott's fall because they remain undefined. Until the standard of care is identified, its breach cannot be passed upon with any measure of reasonableness by a jury. Scott has failed to carry her *690 burden to show any definable negligence on the part of Kroger.
¶ 33. I would reverse and render a verdict in favor of the appellant.
SOUTHWICK, P.J., joins this separate written opinion.