854 So.2d 1051 (2003)
ENTERGY MISSISSIPPI, INC.
v.
Brenda BOLDEN.
No. 2002-CA-00265-SCT.
Supreme Court of Mississippi.
September 25, 2003.
*1053 James Lawton Robertson, Jackson, Laura G. McKinley, Attorneys for Appellant.
Richard Benz, Jr., Attorney for Appellee.
EN BANC.
SMITH, Presiding Justice, for the Court:
¶ 1. Brenda A. Bolden ("Bolden") brought suit against Entergy Mississippi, Inc. ("Entergy") on April 1, 1998, in the Circuit Court of Sunflower County. The first trial ended in a mistrial. Thereafter, in the second trial a jury awarded Bolden $532,000 on November 14, 2001, and judgment was entered accordingly. The trial court denied Entergy's motion for judgment notwithstanding the verdict, or for a new trial or remittitur. Aggrieved, Entergy appeals to this Court.

FACTS
¶ 2. This case arose out of a motor vehicle accident in Sunflower County on July 1, 1997. Bolden was traveling north on B.B. King Road, and W.L. Strawbridge ("Strawbridge"), an Entergy employee, was traveling south on B.B. King Road. Strawbridge made a left turn in front of Bolden onto Lynbar Street when Bolden struck his Entergy truck. There was no testimony by Strawbridge at the trial. A corporate representative was sent by Entergy. There was disputed testimony whether Bolden was speeding. In her deposition she said she was traveling 35 miles per hour, and at trial she stated that she was going 20 miles per hour. However, the accident report stated that she was traveling 20 miles per hour. The speed limit was 25 miles per hour. There is no evidence that Strawbridge used his turn signal to indicate to Bolden that he was making a left turn. By all accounts the day was bright and clear, and there was nothing to obstruct Bolden's view. As the Entergy truck was turning left, Bolden's Ford struck it.
*1054 ¶ 3. Bolden sustained injuries to the left side of her body including her knee, shoulder and ankle. She underwent surgery on July 22, 1997, to repair her left knee. Dr. J.O. Manning said she had a prior basketball injury to that knee in 1983. Ankle surgery was performed on August 14, 2000, by Dr. George Wood, II.
¶ 4. Due to her injuries Bolden was unable to go back to her job as a security officer and had lost wages of $9,600. Her total medical expenses were $31,686.06. Dr. Paul Williams assigned a 15% impairment to the left knee and 10% impairment to the left ankle. Dr. Manning testified that he felt that Dr. Williams's impairment ratings were low. Dr. Williams recommended in June of 1998 that Bolden go back to work. He further stated that she was more at risk to develop arthritis.
¶ 5. Entergy raises the following issues on appeal:
I. WHETHER THE LOWER COURT ERRED IN INSTRUCTING THE JURY THAT STRAWBRIDGE "AS A MATTER OF LAW WAS NEGLIGENT AND THEREFORE ENTERGY MISSISSIPPI, THROUGH THE ACTIONS OF W.L. STRAWBRIDGE WAS NEGLIGENT."
II. WHETHER THE LOWER COURT ERRED IN NOT INSTRUCTING THE JURY CONCERNING A SPECIAL HAZARD.
III. WHETHER THE LOWER COURT ERRED IN REFUSING TO ISSUE A CONTRIBUTORY NEGLIGENCE INSTRUCTION.
IV. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT ENTERGY A REMITTITUR, OR, IN THE ALTERNATIVE, A NEW TRIAL ON THE ISSUE OF DAMAGES.
V. WHETHER BOLDEN'S CLOSING ARGUMENT WAS PROPER.

STANDARD OF REVIEW
¶ 6. There are several standards of review that must be used in analyzing the issues in this appeal. First, when reviewing jury instructions on appeal, we must read them as a whole. Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954, 968 (Miss.1999). While a party is entitled to have jury instructions submitted that represent his or her theory of the case, an instruction that "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence" need not be submitted to the jury. Humphrey v. State, 759 So.2d 368, 380 (Miss.2000). This Court will not find reversible error where the instructions actually given, when read together as a whole, "fairly announce the law of the case and create no injustice." Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (citing Collins v. State, 691 So.2d 918, 922 (Miss.1997)). Moreover, the standard of review of jury verdicts is as follows:
Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.
Id. (citing Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985)).
¶ 7. The standard of review for whether a peremptory instruction should be granted is the same as the standard for a directed verdict. Herrington v. Spell, 692 So.2d 93, 97 (Miss.1997). The standard of review in cases where a directed verdict has been granted is as follows: *1055 "[t]his Court conducts a de novo review of motions for directed verdict....If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." Pace v. Fin. Sec. Life of Miss., 608 So.2d 1135, 1138 (Miss.1992) (citation omitted). Additionally, this Court has held that "[a] trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." Vu v. Clayton, 765 So.2d 1253, 1254 (Miss.2000) (quoting Vines v. Windham, 606 So.2d 128, 131 (Miss.1992)).

DISCUSSION

I. WHETHER THE LOWER COURT ERRED IN INSTRUCTING THE JURY THAT STRAWBRIDGE "AS A MATTER OF LAW WAS NEGLIGENT AND THEREFORE ENTERGY MISSISSIPPI, THROUGH THE ACTIONS OF W.L. STRAWBRIDGE WAS NEGLIGENT."
¶ 8. A directed verdict was granted in favor of Bolden on the issue of the negligence of the Entergy driver. Based on the standard of review discussed herein, the trial court determined that the evidence was so overwhelmingly in favor of Bolden on this issue that Entergy was negligent, and a peremptory instruction was granted. When reviewing requests for peremptory instructions, we consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997). Our rules and case law allow for questions to be removed from the jury's consideration when there exists no factual question for it to resolve. M.R.C.P. 50(a) & cmt. See also Mayor & Bd. of Aldermen of the City of Vicksburg v. Young, 616 So.2d 883, 886-87 (Miss. 1992); Hasson v. Hale, 555 So.2d 1014, 1016 (Miss.1990); Bryant v. Alpha Entertainment Corp., 508 So.2d 1094, 1096-97 (Miss.1987).
¶ 9. Bolden submits that a reasonable jury could not have found that Entergy was not negligent based upon the actions of its agent. Herrington v. Spell, 692 So.2d at 97. We agree. No reasonable juror could have concluded from the evidence presented that Strawbridge was not negligent. Unrebutted testimony established that Strawbridge was negligent in crossing in front of Bolden at the intersection where the collision occurred. No contrary evidence was placed in the record to make this a fact question for the jury.
¶ 10. An accident description in Entergy's accident adjuster's report stated, "Entergy driver made a left turn in front of other vehicle that had the right-of-way. We failed to yield right-of-way." The motor vehicle report from the Indianola Police Department stated, "(Entergy) driver stated that he didn't see (Bolden) and cut across in front of (Bolden) causing the collision." Both of these reports were admitted into evidence. Strawbridge's supervisor even testified that he agreed with the Entergy adjuster's report concerning Strawbridge's negligence.
¶ 11. The jury instructions left room for the jury to determine the proximate cause of the accident and apportion damages with respect to the amount of fault due to each party's negligence. The trial court did not err in instructing the jury that Strawbridge was negligent as a matter of law and that, therefore, Entergy was negligent through Strawbridge's actions.

II. WHETHER THE LOWER COURT ERRED IN NOT INSTRUCTING THE JURY CONCERNING *1056 A SPECIAL HAZARD.
¶ 12. At trial, Entergy requested that the court submit Instruction D-3 to the jury. This instruction stated that the "driver or operator of any motor vehicle is under a duty to decrease the speed of their vehicle [sic] when approaching and crossing an intersection, or when a special hazard exists with respect to pedestrians or other traffic." The court refused Instruction D-3. However, the trial court accepted Entergy's Instruction D-2, which stated that "[t]he operator of a motor vehicle has... a duty to reduce their speed [sic] when approaching an intersection." In its brief, Entergy states that two important elements exist in Instruction D-3 which are absent from Instruction D-2 and all other instructions submitted to the jury: (1) a motorist has the duty to reduce her speed when a special hazard exists; and (2) a motorist's duty to decrease speed when faced with a special hazard is a function of statute and failure to comply with the statute is negligence as a matter of law.
¶ 13. In support of its proposed instruction, Entergy cites Miss.Code Ann. § 63-3-505. This section of the Mississippi Code sets out the duty of a motorist with regard to special hazards:
[T]he driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic....
Miss.Code Ann. § 63-3-505 (Rev.1996) (emphasis added). We have had numerous opportunities to interpret this statute, but only one of our decisions focuses on the existence of a "special hazard" within the meaning of § 63-3-505.
¶ 14. In Bullock v. Sim Ramsey, Jr. Trucking Co., 207 So.2d 628, 629 (Miss. 1968), the plaintiffs were driving their automobile southbound in the left-hand lane of Interstate 55. As they crossed a bridge on the highway, the plaintiffs approached the scene of an automobile accident. Id. The plaintiffs saw the emergency lights of a highway patrol car and a police car, which were both facing north. Id. In addition, the plaintiffs saw a police officer in the roadway flashing a red light. Id. Seeing the emergency vehicles and the police officer in the roadway, the plaintiffs drove their car into the right-hand lane and slowed down to a speed of only a few miles per hour. Id. Just as the plaintiffs' car was parallel to one of the wrecked cars in the left-hand lane, the defendant approached the scene from behind the plaintiffs' car. Id. Unable to stop his truck, the defendant attempted to drive his truck between the plaintiffs' automobile and one of the wrecked cars obstructing the left-hand lane. Id. The resulting collision between the defendant's truck and the plaintiffs' automobile injured the plaintiffs. Id. The plaintiffs alleged that the defendant was driving his truck at an excessive rate of speed and that there were special hazards present at the time and place of the collision. Id. We held that the plaintiffs' declarations were "sufficient to state a cause of action, and that cause was shown by the proof offered." Id.
¶ 15. Here, the thrust of Entergy's argument on this point is that a vehicle poses a special hazard within the meaning of Miss.Code Ann. § 63-3-505 where the driver of the vehicle is "looking for a street with which he may not be familiar, and who may be momentarily inattentive to other traffic." The Legislature did not provide a definition of the phrase "special hazard" as it is used in § 63-3-505, and this Court has not delineated the precise *1057 scope of that language. However, we have never held, and the statute does not provide, that a momentarily inattentive driver is a special hazard for which another driver must reduce speed. Moreover, a comparison of the facts in this case to those presented in Bullock makes it readily apparent that the Entergy truck here was not a special hazard. In Bullock, there were emergency vehicles in the median and a police officer on the roadway. The emergency lights on the highway patrol and police cars were illuminated as the plaintiffs approached the accident scene. The police officer was flashing a red light in the center of the interstate. Moreover, there were disabled cars obstructing the left-hand lane of the interstate. Furthermore, at the time of the accident, the plaintiffs' vehicle was traveling at a rate of only a few miles per hour due to the existing accident. The record here, however, is devoid of extreme facts like those present in Bullockthat is, in this case, there were no stalled or wrecked vehicles obstructing the roadway, no emergency vehicles, no emergency lights, etc. The facts here are clearly distinguishable from those presented in Bullock.
¶ 16. The evidence in this case does not support the requested instruction regarding special hazards. Since a party is not entitled to a jury instruction that is not supported by the evidence, Entergy was not entitled to have Instruction D-3 submitted to the jury, and the trial judge therefore did not err in refusing the proposed instruction.

III. WHETHER THE LOWER COURT ERRED IN REFUSING TO ISSUE A CONTRIBUTORY NEGLIGENCE INSTRUCTION.
¶ 17. Entergy argues that the trial court erred in refusing to grant a contributory negligence jury instruction. Entergy contends that Rule 49(c) of the Mississippi Rules of Civil Procedure authorizes a trial court to submit special interrogatories to the jury; therefore, Entergy maintains that the trial court in this case erred when it refused to accept Entergy's special interrogatory, Instruction D-15. However, Entergy offers no authority to support this position.
¶ 18. We have consistently held that "an argument unsupported by cited authority need not be considered by the Court." Dowdle Butane Gas Co. v. Moore, 831 So.2d 1124, 1136 (Miss.2002). In addition, we have expressly held that "[i]t is the duty of an appellant to provide authority in support of an assignment of error." Jones v. Howell, 827 So.2d 691, 702 (Miss.2002). Where an assertion of error is not supported by authority, that assertion is deemed abandoned. Id. This Court is therefore procedurally barred from considering unsupported assertions on appeal. Webb v. DeSoto County, 843 So.2d 682, 685 (Miss.2003).
¶ 19. Here, Entergy failed to meet its burden under our existing case law. In assigning as error the trial court's failure to allow Instruction D-15, Entergy assumed the obligation of presenting to this Court some type of legal authority in support of that position. In its brief, Entergy simply declares that "such an instruction was clearly authorized. Rule 49(c), Miss. R. Civ. P.," referring to the proposed contributory negligence instruction. While Entergy correctly cites the controlling rule regarding special interrogatories, it offers no authority in support of its assertion that the trial court erred in this case. Merely pointing out that our Rules of Civil Procedure authorize the submission of special interrogatories in no way supports the contention that the trial court erred in refusing to allow Instruction D-15. In sum, because Entergy cites no supporting authority for its assertion that the trial court *1058 erred when it refused the special interrogatory, Instruction D-15, we are procedurally barred from considering this issue on appeal.

IV. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT ENTERGY A REMITTITUR, OR, IN THE ALTERNATIVE, A NEW TRIAL ON THE ISSUE OF DAMAGES.
¶ 20. There are no fixed standards as to when an additur or remittitur is proper. Leach v. Leach, 597 So.2d 1295, 1297 (Miss.1992). Therefore, we proceed on a case-by-case basis in determining whether a jury award is excessive. Biloxi Elec. Co. v. Thorn, 264 So.2d 404, 405 (Miss.1972). We will not disturb a jury's award of damages unless its size, in comparison to the actual amount of damage, shocks the conscience. City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss.1983). The standard of review for the denial of a remittitur is abuse of discretion. Odom v. Roberts, 606 So.2d 114, 121 (Miss.1992). A remittitur is appropriate when either (1) the jury or trier of fact was influenced by bias, prejudice, or passion, or (2) the damages were contrary to the overwhelming weight of the evidence. Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 944 (Miss.1992). "The bias, prejudice or passion standard is purely a circumstantial standard[.]" Cade v. Walker, 771 So.2d 403, 407 (Miss.Ct.App.2000). "[E]vidence of corruption, passion, prejudice or bias on the part of the jury (if any) is an inference... to be drawn from contrasting the amount of the verdict with the amount of the damages." Rodgers, 611 So.2d at 944-45.
¶ 21. It is clear from the record that the most generous award of special damages would result in Bolden obtaining roughly $41,286.00. The total awarded in this case adds almost $500,000 to that sum for future pain and suffering. A remittitur is proper if the jury verdict evinces bias, passion or prejudice. Miss. Power & Light Co. v. Cook, 832 So.2d 474, 485 (Miss.2002). See also J.O. Hooker & Sons, Inc. v. Roberts Cabinet Co., 683 So.2d 396 (Miss.1996); Terex Corp. v. Ingalls Shipbuilding, Inc., 671 So.2d 1316 (Miss.1996). A remittitur is appropriate if there is insufficient proof to support the award of damages. Cade, 771 So.2d at 406. The plaintiff has the burden of proving her damages by a preponderance of the evidence. TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1016 (Miss.1997). When the amount of the verdict evinces passion, prejudice or bias, it is the duty of this Court to order a remittitur. Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 225 (Miss.1969). We conclude that the scant testimony offered in support of damages for pain and suffering does not justify such a large award of damages for pain and suffering. The size of the award here, given the facts of the case at bar, "shocks the conscience" of this Court. As such, we hold that the trial court abused its discretion in failing to grant Entergy a remittitur reducing the verdict from $532,000 to $232,000.

V. WHETHER BOLDEN'S CLOSING ARGUMENT WAS PROPER.
¶ 22. Entergy claims that Bolden's closing arguments were wholly unsupported by facts in evidence and were designed to incite bias, passion, or prejudice on the part of the jury. This Court has continually held that counsel is afforded broad latitude in closing argument. Berry v. State, 703 So.2d 269, 281 (Miss. 1997). This latitude is set out by the Court in Nelms & Blum Co. v. Fink, 159 Miss. 372, 382-383, 131 So. 817, 820 (1930). However, an issue is waived on appeal where there was no contemporaneous objection. *1059 Russell v. State, 607 So.2d 1107, 1117 (Miss.1992). There was no objection made at trial by Entergy's trial counsel, Mr. Perkins. However, "[i]n order to reverse under the plain error doctrine, the reviewing court must find both error and harm." Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 727 (Miss.2001); Dobbins v. State, 766 So.2d 29, 31 (Miss.Ct.App.2000); Riggs v. State, 744 So.2d 365, 372 (Miss.Ct. App.1999). Since there was no objection made in this case, the error, if any, is harmless.
¶ 23. The Fifth Circuit has called "the use of the closing arguments to bring before the jury damaging facts not in evidence and never established a particularly indefensible tactic." Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 284 (5th Cir.1975). The Fifth Circuit further held that "where placing material facts not in evidence before the jury in final argument substantially prejudices a party, reversal is required." Id. at 285.
¶ 24. The statements that Entergy claims are in error here consist of the statement in closing that Bolden's knee is more at risk for arthritis. However, in Dr. Williams's testimony he stated that Bolden was more at risk to develop arthritis. Also, Entergy argues that mentioning Bolden's property damage to her car was error because this had been previously settled. This is harmless error. No amount was even mentioned regarding the value of the car.
¶ 25. Entergy further claims that it was error for Bolden's counsel to assert that Bolden suffers with every step. However, the jury was instructed that what the attorneys said was not evidence. The jurors had heard all of the evidence, including doctors' testimony, and could decipher that evidence.
¶ 26. Under the plain error doctrine, this is not clear error and certainly not harmful.

CONCLUSION
¶ 27. For these reasons, we conclude that only Entergy's assignment of error regarding damages is well taken. We remit the judgment from $532,000 to $232,000, and affirm the judgment as remitted to $232,000, provided this remitted judgment is accepted by Brenda Bolden within ten (10) days of the final judgment of this Court. Otherwise, the judgment is vacated, a new trial confined to the issue of damages is granted, and the case is remanded for such. Should Bolden accept the remittitur, the principal sum of $232,000 will be payable together with interest at the legal rate from the date of the original judgment. On all other issues, we affirm the trial court.
¶ 28. AFFIRMED AS TO LIABILITY; JUDGMENT REMITTED FROM $532,000 TO $232,000, AND AFFIRMED AS REMITTED, CONDITIONED ON ACCEPTANCE BY BRENDA BOLDEN WITHIN 10 DAYS OF THE FINAL JUDGMENT OF THIS COURT. OTHERWISE, THE JUDGMENT IS VACATED, AND THE CASE IS REMANDED FOR A NEW TRIAL AS TO DAMAGES ONLY.
PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.
*1060 McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
¶ 29. I agree with the majority's findings concerning Jury Instruction 5 (or P-9), which is essentially a peremptory instruction and/or directed verdict concerning negligence, and its findings regarding the trial court's failure to grant Instruction D-15, which amounts to a contributory negligence instruction. I write separately on these issues only to flesh them out more in depth. However, since I disagree with the majority's finding as to the jury's verdict on damages, I also dissent.
¶ 30. Entergy argues that the trial court erred by allowing instruction P-9, which is essentially a peremptory instruction and/or directed verdict concerning negligence. This argument fails for a couple of reasons. The trial court found that, based on the evidence, it was undisputed that Strawbridge, Entergy's employee, was the negligent party. "The standard of review for whether a peremptory instruction should be granted is the same as the criteria for a directed verdict." Pickering v. Industria Masina I Traktora (IMT), 740 So.2d 836, 842 (Miss.1999) (citing Herrington v. Spell, 692 So.2d 93, 97 (Miss. 1997); Wilner v. Miss. Export R. Co., 546 So.2d 678, 681 (Miss.1989)). We have stated that:
Miss R.Civ.P. 50 requires the trial court to take a case from a jury and grant a directed verdict if any verdict other than the one directed would be erroneous as a matter of law. The comment to the Rule instructs the trial court to look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, would support a verdict for that party, the case should not be taken from the jury." Kussman v. V & G Welding Supply, Inc., 585 So.2d 700, 702 (Miss.1991).
McKinzie v. Coon, 656 So.2d 134, 137 (Miss.1995). "If the facts so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, then the peremptory instruction should be granted." Pickering, 740 So.2d at 843 (citing McMillan v. King, 557 So.2d 519, 522 (Miss.1990)). The evidence to support a peremptory instruction included: (1) The unrefuted testimony of Bolden that Strawbridge did not have his left turn signal on; (2) The fact that both Entergy's and the Police Department's reports show that Strawbridge failed to yield and turned left at the intersection; (3) The unrefuted evidence and testimony presented that Bolden had no opportunity to avoid the accident; (4) The fact that Strawbridge was in town the day of the trial, but did not appear to rebut any testimony or evidence; and (5) The fact that according to the traffic laws Bolden had the right of way and that Strawbridge had the statutory duty to signal his turn and yield to traffic with the right of way. Miss.Code Ann. §§ 63-3-133, 63-3-703, 63-3-707, 63-3-709, & 63-3-803.[1] Based on this evidence there can be no doubt that Strawbridge's negligence caused the accident. There is no dispute of facts concerning the details of the accident, and Strawbridge and Entergy, through its own accident report, admit to fault.[2]
*1061 ¶ 31. Entergy argues that since there is a dispute as to whether Bolden was going ten to fifteen miles over the speed limit, there is justification for a denial of the peremptory instruction and/or directed verdict. As we have stated in other cases "[o]nly by stretching testimony beyond imagination is it possible that reasonable jurors could have reached [a] different verdict." McKinzie, 656 So.2d at 141. "The only way that the trial court could have concluded that an issue of fact existed concerning [Bolden's] contributory negligence was by building a tower of inferences on [a] slender reed of testimony." Vines v. Windham, 606 So.2d 128, 131 (Miss.1992).
¶ 32. Additionally, a party may not object to a jury instruction at the appellate level without having raised that issue at the trial court level. As we have stated "[f]ailure to make a contemporaneous objection and allow the trial court the opportunity to cure the defect is a procedural bar and constitutes waiver of the argument on appeal." Haggerty v. Foster, 838 So.2d 948, 954 (Miss.2002) (quoting Gatlin v. State, 724 So.2d 359, 369 (Miss.1998)). A close look at the record shows that trial counsel for Entergy, Mr. Perkins, never objected to the peremptory instruction and never raised that issue in the Motion for Judgment Notwithstanding the Verdict, Motion for Remittitur, or in the alternative, Motion for a New Trial on the issue of Damages. The trial transcript reflects the following:
By the Court: All right, let's look at 1, 4, 9, and 5. The difference between 4 and 9 is that in P-9
By Mr. Patton: The number Paragraph 3 is inserted.
By the Court: As a matter of law, basically a directed verdict for Strawbridge was negligent and therefore Entergy was negligent. And then it goes to Paragraph 5. Then if you find by a preponderance the negligence was a proximate contributing cause, if any, then you shall return a verdict against Entergy Mississippi.
By Mr. Benz: So as I see that, it allows them to talk about 35. It also does not direct a verdict concerning the damages which was one of the objections we had to P-1, I though. So that leaves them open to argue whether or not damages were causedI think that's not refuted, but anyway
By Mr. Patton: It still leaves it open.
By Mr. Benz: It still leaves those two open which cures the two objections as I understood in P-1.
By the Court: Mr. Perkins can still argue that she was speeding and that her speeding was a contributing cause.
By Mr. Patton: Correct.
By the Court: All right, Mr. Perkins, any comment?
By Mr. Perkins: We accept P-9.
By the Court: P-9
By Mr. Benz: With that, then we will withdraw P-1, 4 and 5.
By the Court: On P-9, shouldn't you take out WL Strawbridge?
By Mr. Benz: Yes, Sir.
By Mr. Patton: That's correct.
By Mr. Benz: In the last sentence.
By the Court: The last sentence should be against Entergy of Mississippi.
By Mr. Benz: I've got a big marker. Do you want me to go get it?
By the Court: I marked it out.
(emphasis added). As the record shows, Entergy did not object to instruction P-9. It acquiesced to its inclusion in the jury instructions. Furthermore, a review of the Motion and hearing on the JNOV, Remittitur, or in the alternative, Motion *1062 for a New Trial reflects that Entergy again failed to raise any issue or argument concerning instruction P-9.
¶ 33. Entergy argues that the trial court erred by failing to instruct the jury on the issue of contributory negligence. This argument too fails for a couple of reasons. Entergy cites no authority to support its position on this issue except Miss. R. Civ. P. 49(c). Rule 49(c) only permits a trial court, in its discretion, to submit to the jury a general verdict accompanied by interrogatories on one or more issue of fact. Miss. R. Civ. P. 49(c). This Rule certainly does not support an argument concerning contributory negligence. As this Court has stated many times, "[f]ailure to cite any authority may be treated as a procedural bar, and we are under no obligation to consider the assignment." McClain v. State, 625 So.2d 774, 781 (Miss.1993); Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992); R.C. Petroleum Co. v. Hernandez, 555 So.2d 1017, 1023 (Miss.1990); Read v. Southern Pine Elec. Power Ass'n., 515 So.2d 916, 921 (Miss.1987). Thus, I agree with the majority that this issue is procedurally barred by Entergy's failure to cite supporting authority.
¶ 34. Additionally, a party is entitled to an instruction on contributory negligence only if it is supported by credible evidence. Haggerty, 838 So.2d at 955.[3] Entergy presented no evidence tending to show that Bolden was contributorily negligent. The only evidence Entergy presented was evidence to rebut Bolden's estimate of damages. Since Entergy failed to present any credible evidence to support an instruction on contributory negligence, the trial court did not err in refusing instruction D-15.
¶ 35. Also, two of the defendant's instructions which were given to the jury permitted the jury to find Bolden contributory negligent. Instruction D-2, as given to the jury as Jury Instruction 7, stated that:
The Court instructs the jury that the operator of a motor vehicle has a duty to drive their automobile at a speed no greater than that which is reasonable and prudent under the circumstances then and there existing and not to exceed the posted speed limit, a duty to reduce their speed when approaching an intersection, a duty to keep a constant lookout in the direction of the travel of their vehicle for other vehicles using the roadway, and a duty to keep their vehicle under control at all times.
If you find by a preponderance of the evidence that Brenda Bolden drove her vehicle at a speed which was greater than that which was reasonable under the circumstances then and there existing or greater than the posted speed limit; failed to reduce her speed as she approached an intersection; failed to keep a proper lookout in her direction of travel; or failed to keep her vehicle under control, then Brenda Bolden was negligent.
If you further find that the negligence, if any, of Brenda Bolden was a contributing proximate cause of the accident, then it is your sworn duty to apportion fault between plaintiff and defendant.
Instruction D-7, as given to the jury as Jury Instruction 9, stated in relevant part that:
The Court instructs the jury that the plaintiff was under a duty after suffering *1063 harm, if any, to exercise care to take reasonable steps to avoid or diminish the damages resulting from that harm. You are further instructed that plaintiff is not entitled to damages for the harm that she could have avoided by the use of due care, nor for the harm which proximately resulted from her own conduct, if any, which contributed to her damages.
Both Jury Instruction 7 and 9 provided Entergy with its requested contributory negligence instruction. As this Court has stated many times, "if the instructions actually given fairly announce the law of the case and create no injustice when read as a whole, no reversible error will be found." Reese v. Summers, 792 So.2d 992, 994 (Miss.2001) (citing Fielder v. Magnolia Beverage Co., 757 So.2d 925, 929 (Miss. 1999)) (collecting authorities). See also Rester v. Lott, 566 So.2d 1266, 1269 (Miss. 1990). There can be no doubt that the jury was properly instructed on the issue of contributory negligence without the inclusion of instruction D-15, which only amounts to an interrogatory instruction and would only be repetition of Jury Instruction 7 and 9 as given to the jury (also known as D-2 and D-7).
¶ 36. Furthermore, when the trial court refused instruction D-15, and asked if there were any objection, counsel for Entergy, Mr. Perkins, stated that he did not object. He acquiesced to the giving of a modified instruction P-8 which by its own language included the instructions and directives contained in instruction D-15. The transcript reflects the following:
By the Court: All right, form of the verdict. All right, that's fine. Okay, we've got P-8, which as amended would be just No. 1, "We find for the plaintiff and assess damages as follows." and an amount for the verdict without, "We find for the defendant." And then we have D-15 and 16. 15 is like a special interrogatory of some kind.
By Mr. Patton: Yes, sir, probably the onecover what we've got.
By Mr. Benz: You have to take out No. 1.
By the Court: Are you talking about D-15?
By Mr. Patton: Yes, sir.
By Mr. Benz: You have to take out Paragraph 1, and you've instructed them that they were.
By the Court: Then you get to what's marked second paragraph, "Was the plaintiff, Brenda Bolden, negligent? Yes or no. What percentage?" But then you have to get to a form of the verdict.
By Mr. Patton: We have to get some money on there or opportunity to give money.
By the Court: I would rather, to keep it simple for the jury, I think when we start throwing these questionnaires back there, I think on closing, you can use that. You can argue that. But I think the thing to do is use P-8 or either P-8 or P-16, depending on which one you want to mark up, and just take out two and just have a blank for the plaintiff.
By Mr. Perkins: Your Honor, we want the jury instruction to give them a right to find for the defendant without by implication.
By the Court: Well, that's my problem is that for them to find for the defendant when I have already ruled that they were negligent as a matter of law, I'm not sure how the could do that. They are going to have to They are going to have to say that the defendant was negligent as a matter of law, but that plaintiff's negligence *1064 contributed to such an extent that her damages are zero. That's how I am reading it.
By Mr. Benz: Remember, there is D-2 that says, that instructs them they may apportion. If they apportion and they put the figure down on D-16 or P-8, whichever it be.
By the Court: Well, I'm going to use P-8 and strike "or" and Paragraph 2. You've got the apportionment. You can argue that, and then give that as amended.
That would be 16, form of the verdict. I'm going to refuse D-15 and D-16. That way I think everybody can argue what they need to argue....
Any objection to that?
By Mr. Benz: No, sir.
By the Court: Mr. Perkins?
By Mr. Perkins: No sir. Can we get a copy of that?
(emphasis added). By advising the trial court that it had no objection to the refusal of instruction D-15, Entergy effectively withdrew instruction D-15. Furthermore, even though Entergy's JNOV Motion, Motion for a Remittitur, and in the alternative, Motion for a New Trial, raises as error the trial court's refusal to allow instruction D-15; Entergy failed to address this point during the hearing on the motion, never mentioned anything about instruction D-15, and mainly argued for a remittitur or new trial on damages.
¶ 37. Lastly, as Entergy argued, the majority finds that the damages awarded were excessive and against the weight of evidence; therefore, it orders a remittitur or new trial. We have stated that:
We proceed on a case-by-case basis in determining whether a jury award is excessive. Biloxi Elec. Co. v. Thorn, 264 So.2d 404, 405 (Miss.1972).... [W]e have stated a very high standard of review.
The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess.
Detroit Marine Eng' v. McRee, 510 So.2d 462, 471 (Miss.1987) (citing Biloxi Elec., 264 So.2d at 405). Furthermore, "[t]he only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting amount of the verdict with the amount of damages." Biloxi Elec., 264 So.2d at 406. Evidence is viewed in the light most favorable to the verdict and all reasonable inferences are given thereof. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992). In essence, we will not disturb a jury's award of damages unless its size, in comparison to the actual amount of damage, "shocks the conscience." City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss.1983). In James v. Jackson, 514 So.2d 1224 (Miss.1987), we enumerated the elements of damages which must be examined for evidence of bias. They are (1) past and future pain and suffering; (2) past and future medical expenses; (3) lost wages; and (4) future disability. Id.
Purdon v. Locke, 807 So.2d 373, 377 (Miss. 2001). Bolden incurred $31,686.06 in medical bills to date. However, testimony indicates that she will more than likely incur future medical expenses to maintain and correct future problems associated with her knee, ankle, and shoulder injuries which resulted from the accident. Bolden documented lost wages in the amount of $9,600. These two amounts total *1065 $41,286.06. As a result of the wreck Bolden reinjured her knee which caused painful swelling and later required surgery and physical therapy. She injured her ankle which required surgery, physical therapy, and the use of a brace. Bolden also injured her shoulder which required her to wear a sling. As a result of these injuries, Bolden is still required to participate in physical therapy and perform home exercises. Physician testimony indicated that Bolden will likely develop arthritis in both her knee and ankle and will continue to walk with a limp. Physician testimony also established that she will likely be required to have another ankle surgery in the future. Bolden has two scars from the accident, one on her knee and one on her ankle. She will also have trouble walking on uneven ground, up and down stairs, and standing for a prolonged period of time. Bolden, as a thirty-two year old single mother, had trouble caring for her three children as a result of her injuries. She lost her home because she was unable to work and pay her bills and sank into depression. Bolden was assigned a permanent impairment rating of 15% to her left knee (75% of which was attributed to a pre-existing injury), 10% to her left ankle, and 10% to her entire body. All of these factors support the jury's award of $532,000. There is no evidence of bias, prejudice, or passion.
¶ 38. Furthermore, a review of holdings concerning other jury verdicts, leads to the same conclusion. In Edwards v. Ellis, 478 So.2d 282 (Miss.1985), we examined whether a $80,000 jury award was excessive and the result of bias, passion, or prejudice. Ellis was injured in automobile accident. Id. at 289. He incurred $2,264.55 in medical bills and was given a 15% permanent impairment rating for his left arm. Id. The jury verdict was nearly forty times the medical damages. Id. In upholding the jury's verdict, we found that in light of Ellis's permanent impairment rating, the judgment was not excessive as to shock the conscience. Id. Then, in Locke, 807 So.2d 373, we examined whether a $500,000 jury award was excessive. Locke had underwent a directional coronary atherectomy (DCA) procedure during which a guide wire broke causing Locke to undergo emergency bypass surgery. Id. at 375-76. Locke testified that he had extreme soreness and discomfort. Id. at 376. Locke's medical bills totaled $47,000. Id. The jury verdict was almost fourteen times the amount of damages. In affirming the jury's verdict, we found that "$450,000 [of the $500,000 award to Locke] represented pain and suffering ... such a figure does not shock the conscience." Id. at 378. Again in Gatewood v. Sampson, 812 So.2d 212 (Miss.2002), we addressed whether a $308,000 jury award was excessive. Sampson was shot in the back of the head while a patron at the Gatewood store during a robbery. Id. at 216-17. He suffered damages totaling $16,000, which included only $3,102.50 in medical expenses. Id. at 223. The jury's verdict was thirty-eight times the amount of damages. Id. In upholding the jury verdict, we found that the award was not entirely disproportionate to the injuries suffered by Sampson. Id. Additionally, in Kroger Co. v. Scott, 809 So.2d 679 (Miss.Ct.App.2001), the Court of Appeals addressed whether a jury verdict in the amount of $74,000 was excessive and the result of bias, passion, or prejudice. Scott sustained injuries due to a slip and fall in Kroger. Id. at 682-83. Her total medical bills were $1,660.75. Id. at 682. The verdict was forty-five times the amount of actual damages. Id. at 684. In upholding the jury verdict, the court of appeals stated that "[d]ue to the uncertainty of the monetary value placed on pain and suffering and future damages, we have affirmed damages up to fifty-one times the actual damages shown." Id. (citing Cade v. Walker, 771 So.2d 403, 409 (Miss.Ct. App.2000)). See also General Motors *1066 Corp. v. Pegues, 738 So.2d 746, 755 (Miss. Ct.App.1998).
¶ 39. Bolden proved a total of $41,286.06 in damages with more medical expenses expected in the future. She suffered from severe physical and emotional pain and was given a permanent impairment rating of 15% to her left knee (75% of which was attributed to a pre-existing injury), 10% to her left ankle, and 10% to her entire body. She will more than likely suffer from arthritis and be required to undergo more surgery in the future. She lost her home and was put under great strain as she is a single mother with three children who had no place to live and could not return to work. The jury verdict of $532,000 is around twelve times the amount of actual damages Bolden proved that she has already incurred. Clearly, the jury verdict does not "shock the conscience" and is not against the overwhelming weight of the evidence. Therefore, I would affirm the trial court's judgment in its entirety.
¶ 40. For these reasons, I concur in part and dissent in part.
EASLEY, J., JOINS THIS OPINION.
NOTES
[1] See Conner v. Harris, 624 So.2d 482 (Miss. 1993) and Gates v. Murphree, 286 So.2d 291 (Miss.1973), where we found a defendant negligent, as a matter of law, for failing to follow applicable traffic laws.
[2] See Stribling v. Hauerkamp, 771 So.2d 415 (Miss.Ct.App.2000), where the Court of Appeals upheld a directed verdict where there was no dispute as to the underlying facts of the accident and the defendant admitted to being at fault.
[3] See also Hill v. Dunaway, 487 So.2d 807, 809 (Miss.1986), where we found that "a party to an action is entitled to have the jury instructed regarding a genuine issue of material fact, viz. the Plaintiff's contributory negligence vel non, so long as there is credible evidence in the record which would support the instruction."