LEE, J.,
DISSENTING:
¶ 20. I disagree with the majority’s decision to reverse as I find clear error with the Board of Review’s fact finding and subsequent decision. Accordingly, I would affirm the circuit court’s reversal of the Board of Review.
¶ 21. Our standard of reviewing the decision of the Board of Review is described in Joseph v. Mississippi Employment Sec. Commission, 771 So.2d 410 (Miss.Ct.App.2000):
The standard of review to be used when reviewing a trial court decision either affirming or denying an administrative agency’s findings and decisions is an abuse of discretion standard. Our standard for reviewing the findings and deci *507 sions of an administrative agency such as the MESC is found in Miss.Code Ann. § 71-5-531 (Supp.1999). “In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Apart from the statute, this Court has spoken to the standard of review of MESC proceedings: “The denial of benefits may be disturbed only if (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (Jf) in violation of the employee’s constihitional rights.” The MESC’s decision is re-buttably presumed to be correct.
Joseph, 771 So.2d at (¶¶4-5) (citations omitted) (emphasis added). Here, Williams claims the circuit court was “arbitrary and capricious” in reversing the Board of Review.
¶ 22. First, I would find Williams to be procedurally barred for failure to cite any authority in her one-page letter which served as her brief. See Entergy Miss., Inc. v. Bolden, 854 So.2d 1051(¶ 18) (Miss.2003). Alternatively, I would apply our standard of review and find that the trial court did not abuse its discretion in reversing the Board as substantial evidence did not exist to support the findings of the Board of Review. During the hearing before the appeals referee, restaurant owner Roger Penn testified that the restaurant does not lay off employees because the need is too great for workers. Penn also stated that he could not recall if Williams had called him after the manager, Shirley Robbins, had told her not to come to work. Robbins stated Williams had neither reported to work the previous Saturday nor called to let Robbins know where she was. Robbins testified that on Monday, May 13, 2002, she told Williams to take two days off work to attend to personal problems, but that Williams was scheduled to work on Thursday. Robbins explained that when she called Williams to come back to work on Thursday, her scheduled day, she could not reach her because, as other employees explained, Williams had already taken another job. The pertinent parts from the testimony of Robbins and Williams are as follows:
Robbins: ... I called Darnell Thursday. I didn’t get any answer. That’s when I learned that she had another job. So I did not contact her anymore because I felt like that if she wanted her job, or wanted to know why, she should have called me, but she did not.
* * *
Referee: Okay, you said that you learned that she was working somewhere else on that day?
Robbins: Yes.
Referee: How did you learn that?
Robbins: One, through one of the employees.
Referee: They told you that she was working for another?
Robbins: She was working somewhere else.
Referee: Did they tell you where she was working?
Robbins: Yes.
* * *
Robbins: I would like to know, would she be willing to come back to work because I didn’t lay her, I didn’t fire her, or nothing like that. And the reason I was calling her Thursday was to get her back on schedule. But I did not.
Williams: I have caller ID, I never had been called.
Referee: Okay.
*508 Williams: But I could.
Referee: Okay, well the question I believe was would you be willing to come back to work for them?
Williams: Well I’m already employed somewhere else.
¶ 23. Robbins further explained that the form which Williams claims is proof positive that she was laid off was not what it appeared to be, but only evidence of a favor Robbins had done for Williams to help Williams stay in her subsidized housing.
¶ 24. In looking at the facts, it is clear that the Board misconstrued the facts and reversed the initial claims examiner and the appeals referee without any justification. It would have been helpful to this Court had the circuit court developed its findings as to why it chose to reverse the Board of Review; notwithstanding this failure to enunciate its reasons, as previously described, I find that sufficient evidence did not exist to support the Board’s findings, and the circuit court reached the proper decision in reversing the Board. I would affirm.
THOMAS, J., JOINS THIS SEPARATE WRITTEN OPINION.